539 A.2d 26

Youngwood Borough Police Department, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Youngwood Borough Police Department *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board.

The Borough of Youngwood, Petitioner.

446

Argued November 20, 1987, before Judges MAC-PHAIL, PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Anthony C. Busillo, II,* for petitioner, Youngwood Borough Police Department.

*Arlene F. Klinedinst,* with her, *James L. Crawford,* for respondent, Pennsylvania Labor Relations Board.

*Thomas H. M. Hough, Hough & Gleason, P.C.,* with him, *Gerald J. Yanity,* for petitioner, Youngwood Borough.

OPINION BY JUDGE MACPHAIL, March 16, 1988:

In this case, the Borough of Youngwood (Borough) and the Youngwood Borough Police Department (Police) have filed cross-appeals from a final order of the Pennsylvania Labor Relations Board (Board) which denied motions of both parties to reopen the case, dismissed exceptions filed by Police and adopted the proposed order of the hearing examiner holding that the Borough (1) had not discriminatorily furloughed its police officers, (2) had not committed unfair labor practices in refusing to bargain over the furlough decision or by notifying the Pennsylvania State Police of the furlough action and, (3) had committed an unfair practice by refusing to bargain over the use of a constable to do police work. We affirm the order of the Board.

This case has an extended record with two proposed decisions from the hearing examiner and two adjudications by the Board. The essential underlying facts are as follows.

On December 31, 1984, the Borough took action to furlough its entire police department. Witnesses for the Borough testified that this drastic action was necessary because a financial crisis had arisen by reason of the failure of the Borough's bookkeeper to pay the Borough's bills on a current basis. By obtaining court authorization to borrow a substantial sum of money, the Borough was able to continue its operations but had to make choices as to what services would be kept and what would be dropped. The Borough had a bargaining agreement with Police during 1984 and arrived at a new agreement with the Police for a new contract for the year 1985.

When Borough's efforts to negotiate some concessions from Police to avoid lay-offs failed, the Borough decided to furlough its police officers. Once that decision was reached, Borough gave notice to the Pennsylvania State Police of their action and requested police protection.[1]

On January 25, 1985, a constable was utilized by the Borough to transport a prisoner to a preliminary hearing before a district justice. That service was previously performed by Police under a set fee arrangement the Borough had with Police.

On February 5, 1985, the Police filed a charge of unfair labor practices with the Board contending that the Borough had violated Section 6(1)(a), (c) and (e) of the Pennsylvania Labor Relations Act (Act), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §211.6.[2]

In a proposed decision and order filed November 26, 1985, the hearing examiner concluded that the Borough's action in furloughing Police was not motivated by

---

[1] In *Pennsylvania State Lodge of the Fraternal Order of Police v. Pennsylvania State Police,* 112 Pa. Commonwealth Ct. 202, 535 A.2d 270 (1987), this Court sustained preliminary objections of the Pennsylvania State Police and dismissed the petitioner's action in equity and for a declaratory judgment to restrain State Police from furnishing police protection under these circumstances.

[2] Section 6(1)(a), (c) and (e) provides:

(1) it shall be an unfair labor practice for an employer

(a) to interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

. . . .

(c) by discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization . . . .

. . . .

(e) to refuse to bargain collectively with the representatives of his employes, subject to the provisions of Section 7(a) of this act.

anti-union animus as Police contended and Borough had no obligation to bargain with Police regarding use of Pennsylvania State Police because the State Police were obligated by statute to provide protective services and the Borough had no control over the State Police while they were performing their statutory duty.

Exceptions were filed by Police whereupon the Board remanded the case to the examiner solely for the purpose of taking testimony regarding the alleged subcontracting of bargaining unit work to constables.

After conducting a further hearing, the examiner concluded that the Borough had committed an unfair labor practice with respect to the constables by violating Section 6(1)(a) and (e) of the Act. The Board's final order adopted the examiner's recommendation and proposed order and disposed of other motions as we previously have noted.

We will confine ourselves to the statement of questions involved as set forth in the briefs of the parties:

(1) Did the Board abuse its discretion in refusing to consider evidence that the Borough resumed Police services?

(2) Did the Board abuse its discretion in failing to conclude that the Borough's temporary cessation of police services without bargaining constituted a [sic] unfair labor practice?

(3) Were the Board's findings that the furloughs were not implemented for discriminatory reasons supported by substantial evidence?

(4) Was the Board's finding that the use of a constable to perform work allegedly previously performed by Police supported by substantial evidence?

We note at the outset that the Board:

[P]ossesses administrative expertise in the area of public employee labor relations and that

great deference ought to be given to the PLRB's assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith. *Richland School District v. Pennsylvania Labor Relations Board,* 71 Pa. Commonwealth Ct. 45, 53-54, 454 A.2d 649, 652 (1983).

Police insist that the record of yet another case brought by them involving these same circumstances should have been received by the examiner and the Board as evidence of the fact that the Board did not "completely and permanently" terminate police operations in the Borough. The Board excluded this evidence as redundant because it had already ruled in its remand decision that the Borough had not completely and permanently ended its police operations.

It seems obvious to us that when the Borough *temporarily* furloughed Police rather than abolish the department and terminate Police, the only fair implication from that action is that police operations were never intended to be completely and permanently ended in the Borough; consequently, we agree with the Board that the examiner correctly excluded the record of another hearing which would demonstrate a fact already accepted by the Board.

Police contend that since Borough did not completely and permanently cease police operations, this case falls squarely under our decision in *County of Bucks v. Pennsylvania Labor Relations Board,* 77 Pa. Commonwealth Ct. 259, 465 A.2d 731 (1983). In that case, Bucks County took action terminating its park ranger program following the rangers' certification as employees under the provisions of the Act of June 24, 1968 (Act 111), P.L. 237, *as amended,* 43 P.S. §§217.1—217.10. The Board concluded that the

County's action in terminating the program and changing the living conditions of the rangers, constituted an unfair labor practice under the Act. We concluded that the Board correctly had found that the County terminated the program for the anti-union reasons and that it failed to bargain over effects of the termination. We reversed the Board's conclusion that the termination of the program itself was an unfair practice and remanded the case for further testimony on the question of whether the termination of the ranger program was permanent.

In the course of the opinion, President Judge CRUMLISH said:

> Although the county did *completely* eliminate its park police service, the Board reached no conclusion as to whether the cessation of the service was *permanent*. The County may not *under any guise* avoid its Act 111 duty to bargain by subsequently directing its employees or others to resume *any* of the duties principally performed by the rangers prior to their termination; if it wishes to resume these duties, the County must reinstate the rangers and bargain with their Association. On remand, the Board must determine whether the park police service has been *permanently* eliminated.

*Id.* at 263, 465 A.2d at 734 (emphasis in original).

Police argue, of course, that that language means that the Borough, unless it completely and permanently abolishes its police services, commits an unfair labor practice if it does not bargain with Police. We believe Police misperceive the import of *County of Bucks* as it applies to the case *sub judice.* Once Borough suspended its police services, it was duty bound, as a matter of public policy, to notify the Pennsylvania State Police of its action for the safety and protection of Borough

citizens. It could not and did not *direct* the Pennsylvania State Police to perform those same services.

Because the State Police are obligated by the provisions of Section 710 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §250, to cooperate *whenever possible* with counties and municipalities to preserve law and order throughout the Commonwealth, the Borough properly requested such minimal services as the State Police could provide. The Borough did not employ the state police "as a guise to avoid its Act 111 duty," the activity proscribed by *County of Bucks.*

We affirm the Board's conclusion that Borough did not commit an unfair labor practice with respect to its furloughing of Police and the notice it gave to the State Police of its action.

Police contend that the Borough's action was motivated not by economic considerations but by anti-union animus. The burden of proving anti-union animus, of course, is on Police. *St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977).

As in most unfair labor practice cases, there is conflicting evidence in the record concerning why the Borough took the action it did. The hearing examiner, who acts as factfinder, found the Borough's testimony regarding its financial difficulty to be credible and that the action it took was compatible with the circumstances in which the Borough found itself due to the negligence of its employee. The examiner also considered alternatives available to the Borough and found them not to be viable. We cannot say as a matter of law that the examiner's findings as affirmed by the Board were not based upon substantial evidence.

Having determined that the findings of fact are supported by substantial evidence and that the conclusions

drawn therefrom by the Board are reasonable, we conclude that the Board's order as it concerns the appeal of Police must be affirmed.

Now we turn to Borough's contention in its cross-appeal that its use of a constable to transport a prisoner to a hearing before a District Justice did not constitute an unfair labor practice. Without reviewing in detail what we have already said regarding the situation when a municipality temporarily suspends its police services for economic reasons, we readily agree with Police that this is a situation where our holding in *County of Bucks* does apply. Here we have the circumstances foreseen by President Judge CRUMLISH where a borough *directs* others to perform services previously rendered by its police force. The examiner found from record evidence that this was a service formerly performed by Police. While Borough officials contend that they did not know who arranged for the transportation of the suspect, the examiner found otherwise.

As we have previously noted, we are bound by the findings of the factfinder if they are supported by substantial evidence. The evidence on this issue was by affidavits submitted by both parties. After a review of those affidavits we conclude that there is substantial evidence to support the examiner's critical findings. We, accordingly, will affirm the Board's order that Borough committed an unfair practice in this regard.

## ORDER

The orders of the Pennsylvania Labor Relations Board in the above-captioned matters are affirmed.