616 A.2d 135

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 13, AFL–CIO, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 6, 1992.

Decided Sept. 25, 1992.

Alaine S. Williams, for petitioner.

Peter Lassi, for respondent.

Nathan C. Pringle, Jr., Deputy Chief Counsel, for intervenor Com. of Pennsylvania.

Before CRAIG, President Judge, DOYLE, J. (P.), and LORD, Senior Judge.

DOYLE, Judge.

The American Federation of State, County and Municipal Employees, Council 13 (AFSCME) appeals an order of the Pennsylvania Labor Relations Board (PLRB) which dismissed AFSCME's charge of unfair labor practices.

AFSCME represents personnel employed as inspectors by the Bureau of Standard Weights and Measures which Bureau is part of the Department of Agriculture;[1] the duty of the inspectors is to check the accuracy of measuring devices throughout the Commonwealth.[2] In 1982 or 1983, the Commonwealth stopped performing vehicle tank meter inspections in Bucks County (measuring devices on tanker trucks). In 1986, the Commonwealth entered into several memoranda of understanding with various counties which divided specific inspection duties between the Commonwealth inspectors and the county inspectors.[3] Thereafter, early in 1989, the Commonwealth told one of its inspectors to stop performing vehicle tank meter inspections in Chester County. Further, on May 2, 1989, the Commonwealth informed another inspector that

---

1. The Department of Agriculture has intervened in this appeal and has filed a brief. The Bureau of Standard Weights and Measures was transferred from the Department of Justice to the Department of Agriculture by Reorganization Plan No. 3 of 1973, Act of July 1, 1973, P.L. 458, 71 P.S. § 751–15.

2. There are some counties in the Commonwealth which have employees who perform much the same task, but inspect other types of scales, meters and measures. *See* note 4, *infra*.

3. The memoranda of understanding with Bucks, Chester, and Delaware counties state that the Commonwealth will be responsible for inspecting certain platform, hopper and vehicle scales; the counties will be responsible for all other types of inspections.

he was not to perform random package inspections in Delaware County.

On August 1, 1989, AFSCME filed a charge of unfair labor practices with the PLRB, alleging that the Commonwealth, in violation of its duty to bargain, unilaterally transferred work performed by bargaining unit employees to employees outside the bargaining unit. On May 1, 1991, the PLRB hearing examiner issued a proposed decision and order finding that the Commonwealth did not commit an unfair labor practice; AFSCME filed exceptions to this decision. On August 1, 1991, the PLRB denied AFSCME's exceptions and issued a final order affirming the proposed decision and order. The PLRB, applying the rule articulated in *Youngwood Borough Police Department v. Pennsylvania Labor Relations Board,* 114 Pa.Commonwealth Ct. 445, 539 A.2d 26 (1988), concluded that the Commonwealth was not required to bargain over transferring inspections to the counties reasoning as follows:

[W]here a governmental employer ceases responsibility for the provision of a public service and a successor provider performs the service as a result of statutorily imposed power or duty and not under the direction of a former provider, there is no obligation to bargain over the decision to cease providing the service. The record shows that the Commonwealth has essentially gone out of the business of providing certain inspection services in individual counties and that these services are now provided by the counties. There is no evidence that the counties perform these services at the direction of the Commonwealth and therefore that the Commonwealth continues to be the ultimate provider of these inspection services. Indeed ... the Weights and Measure Act [4] expressly grants the counties the same authority to perform inspections as is granted to the Commonwealth.[5] Because there is no evidence that the Com-

4. Weights and Measures Act of 1965 (WMA), Act of December 1, 1965, P.L. 988, *as amended,* 73 P.S. §§ 1651–1692.

5. Section 19 of the WMA, 73 P.S. § 1669, grants counties and cities concurrent authority to enforce the WMA and allows counties and cities performing weights and measures inspections to exercise the same powers as the Commonwealth when conducting such inspections.

monwealth remains the ultimate provider of these inspection services, it had no duty to bargain over its decision to cease providing these services. (Citations omitted.)

This appeal followed.

AFSCME contends, first, that the PLRB erred by holding that the Commonwealth had the discretion to transfer, unilaterally, inspection services to the counties without bargaining over the issue, and second, the PLRB erred in construing the WMA to allow the Commonwealth to abandon its responsibilities under that Act when there is a conflicting legislative construction.[6]

Our scope of review of a final order of the PLRB is limited to a determination whether constitutional rights have been violated, an error of law has been committed, or whether findings of fact are supported by substantial evidence. *Commonwealth v. Pennsylvania Labor Relations Board*, 130 Pa.Commonwealth Ct. 426, 568 A.2d 730 (1990). Further, we are mindful that the PLRB possesses administrative expertise in the area of public employee labor relations and should be shown deference; the Commonwealth Court will not lightly substitute its judgment for that of the PLRB. *Teamsters Local Union 77 v. Pennsylvania Labor Relations Board*, 89 Pa.Commonwealth Ct. 433, 492 A.2d 782 (1985). Additionally, in an unfair labor practice action, the complainant bears the burden of proving the alleged charge. *Council 13, American Federation of State, County and Municipal Employees v. Pennsylvania Labor Relations Board*, 84 Pa.Commonwealth Ct. 458, 479 A.2d 683 (1984).

Generally, a public employer commits an unfair labor practice if it unilaterally shifts *any* bargaining unit work to non-members without first bargaining. *City of Harrisburg v. Pennsylvania Labor Relations Board*, 146 Pa.Commonwealth Ct. 242, 605 A.2d 440 (1992). The PLRB's final order, howev-

6. The Department of Agriculture argues that these issues were waived, because they were not raised in AFSCME's exceptions to the PLRB's proposed order. Our review of the record reveals that the issues presented in this appeal were raised in the exceptions; hence, we disagree that they were waived.

er, relying upon the rule articulated in *Youngwood*, concluded that weights and measures inspection duties could be transferred to the counties without bargaining. In *Youngwood*, the Borough of Youngwood, in the grip of a financial crisis, furloughed its entire police department and ceased to provide police protection to its residents. Once that decision was reached, the Borough requested protection from the Pennsylvania State Police. Thereafter, the Youngwood Police filed a charge of unfair labor practices with the PLRB asserting, *inter alia*, that the Borough refused to bargain over the use of the State Police to protect Borough residents. The PLRB held that the Borough was not required to bargain with the Youngwood Police over the State Police providing protection to the Borough. On appeal we affirmed the PLRB's decision and held that the Borough was not required to bargain with the Youngwood Police because, once the entire police department was furloughed and the Borough stopped providing police protection, the State Police had an independent statutory duty to protect the Borough residents. Further, the Borough did not and could not direct the State Police in the performance of police services.

 The PLRB argues that the Commonwealth did not commit and unfair labor practice because the inspections in question have not been exclusively performed by AFSCME members. This argument presents an issue of first impression. The PLRB has consistently held that a union seeking to prove that an employer has committed an unfair labor practice by unilaterally transferring bargaining unit work to employees outside of the unit, must demonstrate that the work in question has been performed *exclusively* by the bargaining unit; when the work in question has not been performed exclusively by the bargaining unit, the public employer has no duty to bargain over the transfer of bargaining unit work to other employees. *AFSCME, Council 13, AFL–CIO v. Department of Agriculture*, 22 PPER ¶ 22186 (1991); *York Paid Firefighters Assn., Local 627, IAFF, AFL–CIO v. City of York*, 19 PPER ¶ 19037 (1988); *Pennsylvania Labor Relations Board v. City of Philadelphia*, 18 PPER ¶ 18048 (1987). In the case

*sub judice,* however, the PLRB stated in its final order that even in a situation where a bargaining unit has not performed the work in question exclusively, an employer may nevertheless commit an unfair labor practice if the transfer of work outside of the bargaining unit is not consistent with past practice. The PLRB reasoned as follows:

A finding of an unfair labor practice might ... be justified if AFSCME had shown that ... county employees are now performing a significantly greater proportion of the total inspections or are now inspecting devices that had traditionally been inspected solely by Commonwealth employees. Indeed, in a case where an employer had previously subcontracted bargaining unit work, the National Labor Relations Board nevertheless found that the employer committed an unfair labor practice by subcontracting bargaining unit work "in a manner different in quantity and kind from that done previously." Howmet Corporation, 197 NLRB No. 91, 80 LRRM 1555, 1558 (1972), *enf'd,* 257 LRRM 2572 (7th Cir. 1974).

The PLRB has administrative expertise in public employee labor relations and this Court will defer to the PLRB's decision to create and apply this rule. *Teamsters.* Moreover, it is logical to require a union to demonstrate that it exclusively performs the work at issue, since in situations where non-bargaining unit employees have been performing the same work as bargaining unit employees, the bargaining unit has tacitly agreed to those conditions.

The PLRB hearing examiner found as fact that one inspector, Raymond Angelucci, was told by the Commonwealth not to perform vehicle tank meter inspections in Chester County and another inspector, Joseph Winkler, was ordered by the Commonwealth not to perform random package inspections in Delaware County. The hearing examiner also found as fact, however, that the Commonwealth and the counties have been performing the inspections at issue for 20 years. Our review of the record demonstrates that this finding is supported by substantial evidence. Nick Mazzie, an inspector employed by the Commonwealth, testified that Commonwealth and County

inspectors have been doing the same work since the inception of the WMA.[7] Further, Joseph Winkler, an inspector who alleges he lost work to Delaware County inspectors, testified Delaware County inspectors performed the same inspections that he conducted and he testified that, on one occasion, he worked with County inspectors.[8]

The PLRB further stated in its final order that even in a situation where a bargaining unit has not performed the work in question exclusively, an employer may nevertheless commit an unfair labor practice if the transfer of work outside of the bargaining unit is not consistent with past practice in a significant way. The PLRB reasoned as follows:

A finding of an unfair labor practice might ... be justified if AFSCME had shown that ... county employees are now performing a significantly greater proportion of the total inspections or are now inspecting devices that had tradition-

7. Nick Mazzie testified as follows:
   Q. You are saying they do the same work, that the County inspectors do the same work as the State inspectors; they just don't do it as well?
   A. They don't do it nowheres [sic] near as well.
   ....
   Q. [S]o that the County sealers and the State inspectors have been doing the same work. It is just that the County inspectors were not doing the work as well as the State inspectors, correct?
   A. Correct they were not properly trained.
   Q. Now, this has been the case that they have been doing the same work since when?
   A. Since the inception of the Weights and Measures laws.
   N.T. 110–111.

8. Winkler testified as follows:
   Q. During that two-and-a-half year period [when Winkler was conducting inspections in Delaware County], the County inspectors were doing the random pack lots, correct?
   A. Uh-huh.
   ....
   Q. [D]id you work with County sealers—
   A. Yes, I did.
   Q. —doing the random lot testing?
   A. Yes, I did.
   Q. So you do have personal knowledge that County sealers were doing random lot testing, random pack lot testing?
   A. They had accompanied me. I had had a problem in a store. Okay?
   N.T. 71–75.

ally been inspected solely by Commonwealth employees. Indeed, in a case where an employer had previously subcontracted bargaining unit work, the National Labor Relations Board nevertheless found that the employer committed an unfair labor practice by subcontracting bargaining unit work "in a manner different in quantity and kind from that done previously." Howmet Corporation, 197 NLRB No. 91, 80 LRRM 1555, 1558 (1972), enf'd, 257 LRRM 2572 (7th Cir. 1974).

In the case *sub judice*, there is no evidence in the record indicating that the work now being performed by the county inspectors is inconsistent with the past practice of both county and Commonwealth inspectors performing weight and measures inspections. We, therefore, must conclude that because the inspections in question were not exclusively performed by AFSCME bargaining unit members, and were in no way significantly different than the past practices of the Commonwealth and the Counties, the Commonwealth did not commit an unfair labor practice by failing to bargain over the transfer of work to the counties.[9]

Accordingly, the order of the PLRB is affirmed.

## ORDER

NOW, September 25, 1992, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is hereby affirmed.

---

**9.** This case does not present the issue of whether, under *Youngwood,* the Commonwealth may cease providing a service piecemeal fashion by no longer performing the service in particular counties or in other smaller geographic regions of the Commonwealth.