SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Petitioner,

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1994.

Decided Jan. 13, 1995.

Reargument Denied March 3, 1995.

Maureen L. Hogel, for petitioner.

James L. Crawford, for respondent.

Michael Brodie for intervenor, Transport Workers Union Local 234.

Before SMITH and NEWMAN, JJ., and KELTON, Senior Judge.

SMITH, Judge.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from the order of the Pennsylvania Labor Relations Board (Board) which adopted the proposed decision and order of the hearing examiner finding that SEPTA committed unfair labor prac-tices within the meaning of Section 1201(a)(1), (5) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1201(a)(1), (5). For the following reasons, the Board's order is reversed.

As defined in Section 301 of PERA, 43 P.S. § 1101.301, SEPTA is a public employer, and the Transport Workers Union, Local 234 (Union), is an employee organization which is the exclusive representative of three bargaining units of SEPTA employees. In 1974, SEPTA unilaterally established a tuition refund program for which Union members were eligible. Guidelines for approved participation in the program were set forth in a written policy which was placed in an internal SEPTA operations manual. The policy set forth conditions regarding grades and types of study permitted under the program and required course selection to be job related. The policy expressly stated that the tuition refund program was a permissive program; it was not available to SEPTA employees as a matter of right, but rather as a discretionary program; and that the program was expressly conditioned upon business needs or budget limitations.

In May 1976, the tuition refund program was suspended by SEPTA due to "current financial problems." Several months later, in response to inquiries from employees, SEPTA stated its intention to continue the program at some point, budget permitting; however, SEPTA noted that there was currently no financial base to continue the program, nor was it optimistic that there would be one in the future. SEPTA continued to receive and hold future tuition reimbursement applications in the event that a sound financial base should return to SEPTA. No Union members sought to bargain regarding the decision to suspend the program, nor were any consulted.

SEPTA reinstated the program in 1978, but again expressly cautioned that continuation of the program would be contingent upon available funds. In 1983, SEPTA issued a pamphlet to Union members describing guidelines for the tuition refund program which was distributed until termination of the program in 1992. The pamphlet contin-

ued to expressly state that the program was a permissive one, instead a discretionary program subject to budget limitations. SEPTA cancelled the program in 1992 in response to significant budgetary constraints due in part to falling ridership and a reduction in SEPTA's state subsidies, forcing significant reductions in budgeted operating costs. SEPTA estimated that elimination of the tuition refund program resulted in a savings of $500,000.

 In response to SEPTA's suspension of the program, the Union filed an unfair labor practice charge alleging that SEPTA's action violated its duty to bargain in good faith over mandatory subjects of bargaining. After hearings, the hearing examiner issued a proposed decision and order in which he concluded that SEPTA committed unfair labor practices in violation of PERA and directed that, inter alia, SEPTA immediately reinstate the tuition refund program consistent with past practice. SEPTA filed exceptions which were dismissed by the Board in its final order adopting the hearing examiner's proposed decision and order. The Board determined that SEPTA's offering of the tuition refund program for the period in question rose to the level of a "past practice" and that the program constituted a form of "wages" under PERA and was therefore a mandatory subject of bargaining.[1]

 SEPTA argues that its actions were consistent with the express provisions of the tuition refund program and that it had no duty to bargain with the Union and was therefore not in violation of Section 1201(a)(5) of PERA which provides, in pertinent part, that public employers are prohibited from refusing to bargain collectively in good faith with the exclusive employee representative in an appropriate unit. Moreover, SEPTA maintains that the tuition refund program, which was voluntarily and unilater-

ally implemented and suspended by SEPTA throughout the years, is not a mandatory subject of collective bargaining because it is neither "wages" within the meaning of PERA, nor did it become wages through past practice.

Section 701 of PERA, 43 P.S. § 1101.701, provides that wages, hours and other terms and conditions of employment must be matters subject to collective bargaining. *See Canon–McMillan Sch. Bd. v. Pennsylvania Labor Relations Board,* 12 Pa.Commonwealth Ct. 323, 316 A.2d 114 (1974). Under PERA, wages means hourly rates of pay, salaries or other forms of compensation for services rendered. 43 P.S. § 1101.301(14). The Board sub judice, relying on the Pennsylvania Supreme Court's decision in *Appeal of Cumberland Valley Sch. Dist.,* 483 Pa. 134, 394 A.2d 946 (1978), rejected SEPTA's attempt to distinguish that case and held that the tuition refund program represented wages and therefore was a mandatory subject of bargaining. SEPTA asserts, and this Court agrees, that the Board erred in relying on *Cumberland Valley Sch. Dist.*

In *Cumberland Valley Sch. Dist.,* the school district and the union entered into a collective bargaining agreement under which the school district agreed to provide health and life insurance and tuition reimbursement for employees. While negotiations for a new agreement were in progress, the existing bargaining agreement expired and the school district thereafter notified teachers that the district would no longer pay educational expenses. The Court concluded that the district's unilateral action under these circumstances constituted a refusal to bargain in good faith under PERA where, during negotiations prior to expiration of the agreement, neither party proposed reduction or elimination of the benefits; and during negotiation of the previous agreement, the district con-

1. This Court's scope of review of a final order of the Board is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether findings of fact are supported by substantial evidence. *American Fed'n of State, County & Mun. Employees, Council 13 v. Pennsylvania Labor Relations Board,* 150 Pa.Commonwealth Ct. 642, 616 A.2d 135 (1992). Because the Board pos-

sesses administrative expertise in the area of public employee labor relations, this Court will not lightly substitute its judgment for that of the Board. In an area of public employee labor relations, this Court will not lightly substitute its judgment for that of the Board. In an unfair labor practice action, the complainant bears the burden of proving the alleged charge. *Id.*

tinued to pay tuition reimbursement. Under these circumstances, the Court determined the benefits to be wages within the meaning of the PERA.

In the matter sub judice, the Board's opinion turned in large measure upon the Court's statement in *Cumberland Valley Sch. Dist.* that tuition reimbursement is a mandatory subject of bargaining. A full reading of the opinion however reveals that the statement was a conclusion rendered solely under the facts presented in that case. Unlike *Cumberland Valley Sch. Dist.*, SEPTA's tuition refund program has never been included in a collective bargaining agreement, nor has it ever been a subject of collective bargaining between the parties. What was at issue in *Cumberland Valley Sch. Dist.* was whether the employer had an obligation to continue previously negotiated benefits which had been provided through an agreement that expired during negotiations for a new agreement, an issue simply not presented here.

■ The Board also determined that SEPTA's tuition reimbursement program was a "past practice" which gave it the same validity as if it were actually written into the collective bargaining agreement. Evidence of past practice can be used to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the agreement. *County of Allegheny v. Allegheny County Prison Employees Indep. Union*, 476 Pa. 27, 381 A.2d 849 (1977); *Wilkinsburg–Penn Joint Water Auth. v. Utility Workers Union of America, Local 191*, 129 Pa.Commonwealth Ct. 561, 566 A.2d 381 (1989). The meaning of past practice has been stated in the following context:

> It must be shown to be the *accepted* course of conduct characteristically repeated in response to the given set of underlying circumstances. This is not to say that the course of conduct must be *accepted* in the sense of both parties having agreed to it, but rather that it must be *accepted* in the sense of being regarded by the [parties] involved as the *normal* and *proper* response to the underlying circumstances presented.

*County of Allegheny*, 476 Pa. at 34 n. 12, 381 A.2d at 852 n. 12 (emphasis in original).

Given SEPTA's unilateral actions regarding its tuition refund program—to which the Union never responded—and given SEPTA's continued express statement that the program was dependent on budget limitations and financial circumstances, no employee should have had a reasonable expectation that such benefit was guaranteed as wages. Under the *County of Allegheny* test, SEPTA's tuition refund program did not rise to the level of a past practice.[2] Hence, no proof exists to demonstrate a separate, enforceable condition of employment. Accordingly, the Board's order is reversed and the remaining issues raised by SEPTA need not be considered in light of this Court's determination.

### ORDER

AND NOW, this 13th day of January, 1995, the order of the Pennsylvania Labor Relations Board is hereby reversed.

■

---

2. Cases cited by the Board in support of its assertion that SEPTA's tuition program constituted a past practice are distinguishable from the present matter and therefore not determinative. In each case, an arbitrator did not attempt to enforce a non-existent provision based on past practices; rather, the arbitrators used past practices, both before and after the effective date of the contracts, to give meaning to and define the scope of the contract provisions in question. *See Commonwealth v. Pennsylvania Labor Relations Board*, 82 Pa.Commonwealth Ct. 330, 474 A.2d 1213 (1984); *Central Susquehanna Intermediate Unit Education Ass'n v. Central Susquehanna Intermediate Unit No. 16*, 74 Pa.Commonwealth Ct. 248, 459 A.2d 889 (1983); *Chester Upland Sch. Dist. Appeal*, 55 Pa.Commonwealth Ct. 102, 423 A.2d 437 (1980).