**PENNSYLVANIA STATE POLICE, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 10, 2006.
Decided Dec. 14, 2006.

Lisa K. Essman, Sr. Counsel, Harrisburg, for petitioner.

Jack E. Marino, Harrisburg, for respondent.

Sean T. Welby, Harrisburg, for intervenor, Pennsylvania State Troopers Association.

BEFORE: McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.[1]

The Pennsylvania State Police (State Police) appeals from the decision and order of the Pennsylvania Labor Relations Board (Board) concluding that it committed unfair labor practices in violation of the Pennsylvania Labor Relations Act (Act)[2] by unilaterally transferring bargaining unit work involving the supervision of police communication operators (PCOs) to non-unit personnel.

In the mid-to-late 1990s, the Commonwealth began planning for the implementation of a technologically advanced incident information management system for the State Police under which dispatching would take place at five consolidated dispatch centers. This would replace a system in which calls came into 81 State Police stations where PCOs, who were State Police civilian employees, received calls and dispatched State Police officers. The PCOs also performed filing and other clerical duties, such as using radios, telephones, paper forms and reports, taking calls and dispatching, faxing news releases, filing automated instant memo system memos, entering protection from abuse orders and using a single-monitor computer, as well as assisting the public. Since 1981, the State Police had assigned police officers (also referred to as corporals or troopers) who were in the bargaining unit represented by the Pennsylvania State Troopers Association (Association) to supervise the PCOs. Supervision of the PCOs entailed scheduling, evaluating, answering questions and substituting for them when they were unavailable to work. In addition to supervising the PCOs, the corporals had other duties to perform as well.

On November 4, 2002, the Commonwealth and State Police filed a unit clarification petition with the Board seeking to include the position of PCO supervisor in a non-police bargaining unit represented by the American Federation of State, County and Municipal Employees (AFSCME). The Commonwealth did not give the Association a copy of the petition, but instead posted a copy of the petition at each communications desk in each police station. It also represented in its petition that no other employee organization claimed to represent the employees in that classification. The Board also did not notify the Association that the petition had been filed, and the Association did not attempt to intervene. The Board issued a nisi

---

1. This case was reassigned to the author on October 17, 2006.

2. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.15.

order of unit clarification directing that the position of PCO supervisor be included in the non-professional/supervisor, clerical, administrative and fiscal unit represented by AFSCME.

In June 2004, the State Police opened the first of the five consolidated dispatch centers using civilian PCO supervisors represented by AFSCME. The PCOs performed dispatching and filing services for the State Police and used automated computer equipment and processes. Supervision of the PCOs at the consolidated dispatch centers included scheduling, evaluating, answering questions and substituting for PCOs when needed. Unlike the bargaining unit PCO supervisors, the civilian supervisors at the consolidated dispatch centers did not have any job responsibilities that required the skill and training of a uniformed police officer.

Soon after the opening of the first consolidated dispatch center, the Association filed a charge of unfair labor practices in July 2004, contending that the State Police had violated Sections 6(1)(a) and (e) of the Act, 43 P.S. § 211.6(1)(a) and (e),[3] by unilaterally transferring the bargaining unit work of supervision of PCOs at the consolidated dispatch centers to non-members of the bargaining unit. At the hearing, the Association argued that members of the bargaining unit had supervised PCOs for years and, with proper training, were capable of supervising them now, making the supervision of PCOs at the consolidated dispatch centers bargaining unit work. The State Police argued that the work was so technologically advanced that it could not be considered substantially equivalent

to any work previously performed by the bargaining unit. Testimony was provided by Vicki Marrone (Marrone), a civilian Police Communications Manager employed by the Pennsylvania State Police at the Harrisburg consolidated dispatch center, regarding the new technology and her numerous supervisory duties. She stated that unlike the bargaining unit PCO supervisors, the civilian supervisors at the consolidated dispatch centers did not have job responsibilities that required the skill and training of a uniformed police officer. Also testifying was Sergeant Joseph Gaughan, employed by the Pennsylvania State Police, who stated that he served as a PCO supervisor since 1995 while he was a state trooper. He testified that the duties Marrone testified about were the ones he performed when he supervised PCOs at the station.

The hearing examiner concluded that the State Police had violated the Act because despite the use of advanced technology, the supervision of PCOs at the consolidated dispatch centers remained substantially equivalent to the supervision performed by bargaining unit members at the stations. He further determined that there was no merit to the State Police's contention that its request for unit clarification to include the supervision in the AFSCME unit relieved it of any duty to bargain over the matter, and because the Association had requested bargaining over the matter, the hearing examiner ordered the State Police to rescind the transfer of the bargaining unit's supervisory work and reinstate that work to the Association's bargaining unit.

---

**3.** Section 6 provides, in relevant part:
  (1) It shall be an unfair labor practice for an employer—
    (a) to interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

  (e) to refuse to bargain collectively with the representatives of his employes, subject to provisions of section seven (a) of this act.
  43  P.S. § 211.6.

■ The State Police filed exceptions which the Board dismissed because it, too, concluded that the civilian supervisors were essentially performing the same supervisory function as were the bargaining unit supervisors, stating:

The Commonwealth may certainly introduce new technology as part of its core managerial function to improve police services with advanced dispatching equipment and techniques. However, the new computerized, consolidated technology did not change the fact that the [State Police] continues to require employe dispatchers to operate dispatching equipment, albeit advanced equipment, and supervisory personnel to supervise these functions. Indeed, Finding of Fact numbers 2 & 5 demonstrate that the essential duties of the police supervisors in the bargaining unit at the stations are the same as those of the civilian police communications supervisors at the [consolidated dispatch centers]. The new technology did not displace the need for supervisors performing essential supervisory functions....Therefore, the [State Police] simply replaced the Act 111[4] police supervisors with civilian supervisors. Ac-

cordingly, the record supports the Examiner's conclusion that the civilian communications supervisor's duties are equivalent to the duties performed by the Act 111 supervisors.

(Board's October 18, 2005 Final Order at 3.) (Footnote added.) This appeal followed.[5]

■ The State Police first contends that the Board erred in concluding that the work performed by the civilian PCO supervisors at the consolidated dispatch centers was substantially equivalent to that performed by the bargaining unit members at the individual police stations. It points out that the PCOs in the stations were using antiquated systems to perform rudimentary functions, and the PCOs and the PCO supervisors in the consolidated dispatch centers were using new technology to deliver services in a totally new way. They argue in their brief:

The PCO supervisors are therefore fulfilling completely different job tasks and requirements than the enlisted personnel were performing in the field. No corporal or sergeant is currently capable of performing the job of the PCO without extensive training and certification.

4. The Act commonly referred to as "Act 111" is the Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 grants police and fire personnel the right to collectively bargain with their public employer as well as the right to arbitrate their disputes.

5. Our scope of review is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed, or whether the Board's necessary findings are supported by substantial evidence. *County of Lebanon v. Pennsylvania Labor Relations Board,* 873 A.2d 859 (Pa. Cmwlth.2005). We note that the law is well settled that a public employer commits an unfair labor practice "when it unilaterally transfers *any* unit work to non-members without first bargaining with the unit." *City of*

*Harrisburg v. Pennsylvania Labor Relations Board,* 146 Pa.Cmwlth. 242, 605 A.2d 440, 442 (1992) (emphasis in original). *Accord American Federation of State, County & Municipal Employees, Council 13 v. Pennsylvania Labor Relations Board,* 150 Pa.Cmwlth. 642, 616 A.2d 135 (1992). The Association, as the complainant, bears the burden of proving the charge. *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 694 A.2d 1142 (Pa.Cmwlth. 1997). In reviewing the Board's order, "we are mindful that the [Board] possess administrative expertise in the area of public employee labor relations and should be shown deference; [this court] will not lightly substitute its judgment for that of the [Board]." *American Federation,* 616 A.2d at 137.

[T]he new technology in use at the CDS [] created an entirely new body of work, work that had not been previously performed by any Commonwealth employee.

\* \* \*

PCOs now do not do this work in the stations. They must have specialized training, and certification to work in CDCs. The PCO supervisors must have the same training and certifications. The jobs of the PCOs and their PCO supervisors are so intertwined that the supervisory aspects of the supervisor's job cannot be separated from the PCO functions. [Association] members do not do this work in the stations. They do not have the skills required to perform these new functions.

(State Police's brief at 11–13.)

While the manner of performing the work has changed at the consolidated dispatch centers because it is more high tech and requires additional training and certification, the record reflects that the essential functions and purpose of the supervisory responsibilities have not changed. The Board concluded that the work performed by the PCO supervisors at the consolidated dispatch centers was substantially equivalent to that performed by the corporals at the stations. This conclusion is supported by the testimony of record. Because the record supports the Board's conclusion that the supervision of PCOs at the consolidated dispatch centers remained substantially equivalent to the supervision performed by bargaining unit members at the stations, the Board did not err in its determination.

The State Police also contends that the Board erred in finding an unfair labor practice because in response to its petition for unit clarification, the Board entered a nisi order, placing the position of police communication supervisor in a bargaining unit represented by AFSCME. Relying on *City of Clairton v. Pennsylvania Labor Relations Board*, 107 Pa.Cmwlth. 561, 528 A.2d 1048 (1987), the State Police contend that the Board's nisi order relieved it of any obligation to bargain with the Association.

In *City of Clairton*, the mayor issued an emergency proclamation under which firemen assumed police officers' dispatching duties, thereby putting more officers on street duty. The union filed an unfair labor practice charge contending that the City refused to bargain with the union regarding the reassignment of dispatching work. The Board determined that although the reassignment of police officers to street patrol was a matter of inherent managerial prerogative, the unilateral decision to remove dispatching duties from the bargaining unit's work violated the City's obligation to collectively bargain. On appeal, the City argued that it could unilaterally assign the dispatching work to the firemen because the dispatcher position had not been included in the bargaining unit.

In affirming the Board, we agreed with the Board's position that while the City could file a unit clarification request to bring the dispatcher role before the Board, it could not unilaterally redefine the bargaining unit by removing positions or functions, and such a proceeding, at a minimum, had to include the union which presently represented the employees performing the work if any resolution of the issues were to be made.

■ In this case, the Association was never a party to the petition for unit clarification, making *City of Clairton* inapplicable. Because the Association was not a party, the Board properly determined that failure to involve the Association in the

unit clarification proceeding nullified any defense the State Police would otherwise have obtained from the unit clarification order. Consequently, we reject the State Police's argument that the Board's nisi order adding the position of PCO supervisor to the AFSCME unit relieved it of any duty to bargain with the Association regarding the transfer of that work.

■ If it was not relieved of any obligation to bargain with the Association, the State Police argues that, at the very least, the Board erred in ordering the supervisory work reinstated to the Association rather than limiting the remedy to a direction to bargain over the assignment of work to civilian PCO supervisors. The Board has the discretion to fashion the appropriate remedy for an unfair labor practice under Section 6 of the Act, 43 P.S. § 211.6. Section 8(c) of the Act, 43 P.S. § 211.8(c) further provides that after the Board has found an unfair labor practice, it shall "cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such reasonable affirmative action ... as will effectuate the polices of this act." Under those provisions, it is for the Board and not the courts to fashion a remedy for an unfair labor practice. In *Appeal of Cumberland Valley School District*, 483 Pa. 134, 394 A.2d 946 (1978),[6] our Supreme Court, restating the explanation given by the Court of Appeals for the Eighth Circuit in *Local 155 of International Molders and Allied Workers v. NLRB*, 143 U.S.App. D.C. 20, 26, 442 F.2d 742, 748 (1971), stated:

> Inasmuch as the unfair labor practice charges were supported to our satisfaction by substantial evidence on the whole record, the Board must be given broad authority under the Act, 29 U.S.C. § 160(c), to restore the status quo ante and to make whole any losses suffered by employees because of the unfair labor practices. It is well settled that '[i]t is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged.'

*Appeal of Cumberland Valley School District*, 483 Pa. at 146–147, 394 A.2d at 953. Absent an abuse of discretion, then, we are not free to change the remedy that the Board imposes.

■ Nothing here indicates any abuse on the part of the Board when it restored the work to the Association bargaining unit that previously performed the work. To the contrary, once the Board determined that the Association had lost work that its members previously performed, it would have been an abuse of discretion for the Board not to shift that work back to the Association to remedy the unfair labor practice. *See City of Harrisburg.* Otherwise, as long as it did not lay off any Association member, the State Police would be free to transfer work to other bargaining units and commit an unfair labor practice without any consequence.[7]

---

6. This case involved Section 1303 of the Public Employe Relations Act, known as Act 195, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1303, which has virtually identical language to Section 8(c) of the Act.

7. The State Police rely on two Board decisions in holding that the work need not be returned to the bargaining unit. In those cases, the Board refrained from ordering that the work at issue be reinstated to the original bargaining unit. *See AFSCME, Council 13 v.*

*Department of Public Welfare (Warren State Hospital)*, 18 Pa. Pub. Empl. R. ¶ 18,158 (Final Order 1986), and *AFSCME, Council 13 v. Department of Public Welfare (Ebensburg Center)*, 20 Pa. Pub. Empl. R. ¶ 20,005 (Final Order 1988). The Board now explains that those cases involved a unique and novel issue at the time they were decided—subcontracting where the Commonwealth did not furlough the affected employees. Since those decisions, the Board notes that it has consis-

Consequently, the Board did not abuse its discretion by ordering the work returned to the Association.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this *14th* day of *December*, 2006, the final order of the Pennsylvania Labor Relations Board, dated October 18, 2005, is affirmed.

* * *

DISSENTING OPINION BY Judge LEADBETTER.

I join in the opinion of the majority to the extent it concludes that the State Police [or PSP] committed an unfair labor practice and in that portion of its order which affirms the Board's mandate that PSP bargain over transfer of the work of supervising the dispatchers. I must respectfully dissent, however, from that part of its decision which affirms the additional remedy ordered by the Board restoring the supervisory work to State Troopers.

While it is certainly true that "it is for the Board and not the courts to fashion a remedy for an unfair labor practice," [1] it is equally true that it is not the court's role to rubber stamp any remedy the Board chooses to impose. Unlike the majority, I believe the additional remedy was unwarranted and I would vacate that portion of the order for several reasons.

First, as the PSP points out, in some cases where, as here, no employees have lost jobs, wages or benefits, the Board has ordered bargaining but has refrained from ordering that the work at issue be reinstated to the original bargaining unit. *See AFSCME, Council 13 v. Dep't of Pub. Welfare (Warren State Hosp.)*, 18 Pa. Pub. Empl. R. ¶ 18,158 (Final Order 1987); *AFSCME, Council 13 v. Dep't of Pub. Welfare (Ebensburg Center)*, 20 Pa. Pub. Empl. R. ¶ 20,005 (Final Order 1988). In the latter case, the Board reversed the order of the hearing examiner to reinstate the work, noting that "in cases where no employe has been furloughed or terminated the Board has found sufficient circumstances to warrant tailoring the remedy." *Id.* While a reinstatement order is also common, *see Fraternal Order of Police Queen City Lodge No. 10 v. City of Allentown*, 34 Pa. Pub. Empl. R. ¶ 90 (Final Order 2003), *aff'd*, 851 A.2d 988 (Pa. Cmwlth.2004),[2] and certainly within the Board's authority, the Board has not articulated any reason why reinstatement is the more appropriate remedy in this case, other than to say it is "customary." I do not believe the Board is entitled to the usual degree of deference when it chooses, without significant explanation, to impose inconsistent sanctions in similar situations.

I further disagree with the Board's attempt to support its order by characterizing it as requiring a return to the "status quo ante." Return to the status quo is impossible without dismantling the new

---

tently applied the customary remedy of restoring the work to the unit even where no employees are laid off. Even assuming the Board correctly decided those cases, just because in prior fact situations it fashioned a remedy different than returning the work to the unit, that does not mean that the remedy there constituted an abuse of discretion requiring that in all cases where no employees are laid off there can be no remedy for an unfair labor practice.

1. Maj. op., at 915.

2. The Board's opinion denying supersedeas in *Queen City Lodge* more clearly indicates that the remedy included returning the work to the bargaining unit. *See* 34 Pa. Pub. Empl. R. ¶ 117 (Order denying application for supersedeas 2003).

consolidated dispatch centers and the restructuring of the communications function. When viewed in their entireties, the new jobs filled by members of AFSCME were distinctly different from the jobs of the Association members who previously supervised the dispatchers.[3] As noted by the majority, although the dispatchers, or PCOs, are civilian employees [represented by AFSCME], when they worked out of the 81 police barracks they were supervised by State Troopers, who performed other duties which required the skill and training of a uniformed police officer. The new supervisory positions created in the five consolidated dispatch centers were entirely civilian in nature, consisting of scheduling, evaluating, answering questions from and substituting for the civilian PCOs. Placing troopers in these civilian jobs is not returning them to the status quo, and makes very little practical sense.

Finally, the Board opined that, in lieu of bargaining, the State Police could have avoided an unfair practice charge by filing a petition for unit clarification, including the Association as the unit from which it desired to remove the work. However, since the Association was not included, it chose to give no consideration at all to the unit clarification proceeding, which did occur. While PSP clearly should have listed the Association as an interested party, I do not agree with the Board that the Association's lack of participation in that proceeding was entirely the fault of the State Police, nor that its prior certification of

AFSCME is irrelevant even as to remedy. Although the State Police represented in its petition that no union other than AFSCME was affected and did not give *formal* notice of the proceeding to the Association, a copy of the petition was posted in each barracks and the Association did not seek to intervene.[4] Moreover, it must have been quite obvious that the AFSCME dispatchers in the barracks had not gone unsupervised, yet in certifying the unit for a new supervisory position, the Board made no inquiry as to who had performed that function in the past. Nonetheless, the Board's position appears to be that under these circumstances, its unit clarification order is simply inconsequential. I reject this notion. When a unit clarification petition is brought, the Board has an affirmative responsibility to make more than a token effort to ensure that all affected parties participate, so that its ultimate order will protect the interests of all and will be dispositive and meaningful. Even if proceedings are flawed, orders are mandates unless and until they are vacated. How can an administrative agency so denigrate the significance of its own orders and then expect litigants to respect them?

Because there is no evidence that any troopers lost jobs, hours or wages, because, given the revamping of the dispatch function, a return to the status quo ante was impossible, and because the Board certified AFSCME as the bargaining unit for the new entirely civilian supervisory

---

3. This is not to say that the unfair labor practice determination is unsupported. Established caselaw holds that unilateral removal from a bargaining unit of "any work," that is, any duties, amounts to an unfair practice. Thus, in order to transfer the task of supervising the PCOs from troopers to civilian members of AFSCME, the PSP was required to bargain with the Association.

4. I also note that while relying on the Association's request to the State Police that it bargain over the issue, the Board ignored uncontradicted testimony that the Association's president later stated that the Association was not concerned with retaining the PCO supervisor jobs at the dispatch centers. The hearing examiner accepted the testimony, but found it irrelevant in light of the fact that the Association requested bargaining.

position, I would reverse that aspect of the Board's order that the certified civilian employees be replaced with troopers as PCO supervisors.

Judges COHN JUBELIRER and LEAVITT join this dissenting opinion.