**Charles C. WARWICK, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1995.

Decided Feb. 23, 1996.

Gary M. Lightman, for Petitioner.

Ralph H. Colflesh, Jr., for Intervenor, City of Wilkes–Barre.

Peter Lassi, for Respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and MIRARCHI, Senior Judge.

PELLEGRINI, Judge.[1]

Charles C. Warwick (Warwick) appeals a decision of the Pennsylvania Labor Relations Board (PLRB) that dismissed his claim that the City of Wilkes–Barre (Wilkes–Barre) committed an unfair labor practice by refusing to process his grievance to arbitrate in violation of Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA),

Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.6(1)(a), (e), and the Collective Bargaining by Policemen or Firemen Act (Act 111), Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

Following his conviction of criminal charges on April 28, 1989, Warwick was terminated as a police officer for Wilkes–Barre. Warwick did not appeal his termination to City Council, nor did he attempt to file or did the Police Benevolent Association of Wilkes–Barre, his collective bargaining representative, file a grievance contesting his termination. However, the original criminal conviction was overturned, and on May 1, 1992, Warwick was acquitted of all charges. On April 27, 1993, Warwick filed a grievance with the Chief of Police requesting reinstatement and back-pay. When the Chief of Police did not respond, Warwick then filed a second step grievance which was denied by Wilkes–Barre based upon its contention that Warwick did not have standing to invoke the grievance procedure contained in the collective bargaining agreement.

Warwick then filed an unfair labor practice charge against Wilkes–Barre with the PLRB, contending that Wilkes–Barre violated Act 111 and the Pennsylvania Labor Relations Act (PLRA) by refusing to process his grievance arbitration. The PLRB dismissed the unfair labor practice charge because "an individual employee … lacks standing to allege a violation of the employer's statutory duty to bargain with the employee representative. Only the employee representative may file such a charge." Warwick appeals to this Court.[2]

While collective bargaining for police officers is governed by Act 111, 43 P.S. §§ 217.1–217.10, Act 111 must be read in *pari materia* with the PLRA, because Act 111 lacks procedures concerning the recognition of collective bargaining agents as well as the collective bargaining obligations of employers and collective bargaining agents. *Philadelphia Fire Officers Association v.*

---

1. This case was reassigned to the authoring judge on February 7, 1996.

2. Our scope of review is limited to determining whether there has been a constitutional violation or an error of law, and whether the PLRB's findings are supported by substantial evidence. *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Labor Relations Board,* 654 A.2d 159 (Pa.Cmwlth.1995).

*Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977); *Borough of Nazareth v. Pennsylvania Labor Relations Board,* 534 Pa. 11, 626 A.2d 493 (1993). Only when an obligation imposed by either PLRA or Act 111 has been violated does the PLRB have jurisdiction.

Under Section 8 of the PLRA, the PLRB is only empowered to prevent and remedy unfair labor practices as defined by Section 6 of that act. Act of June 1, 1937, P.L. 1168, § 8, *as amended,* 43 P.S. § 211.8. Warwick alleges that Wilkes–Barre violated its duty to arbitrate under Sections 6(1)(a) and (e) of the PLRA, 43 P.S. §§ 211.6(1)(a), 211.6(1)(e), which provide that:

(1) It shall be an unfair labor practice for an employer—

(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

. . . .

(e) To refuse to bargain collectively with the *representatives* of his employes, subject to the provisions of . . . this act. (Emphasis added).

Warwick also contends that Wilkes–Barre's failure to arbitrate was a violation of Act 111. This Act provides that "(p)olicemen or firemen . . . shall, *through labor organizations or other representatives* designated by fifty percent or more . . . have the right to bargain collectively . . ." 43 P.S. § 217.1. (Emphasis added).[3]

■■■ Even if the collective bargaining agreement is interpreted to provide that an individual employee can file a grievance, Warwick has not made out a claim under any of the statutory provisions upon which he relies. As to Warwick's charge that it was

an unfair labor practice for Wilkes–Barre to refuse to arbitrate under Section 6(1)(a) of the PLRA, that provision specifically requires a violation of his rights under the PLRA, not as he is contending, under the collective bargaining agreement, in order for an unfair labor practice to exist. There is no guaranteed right to grievance arbitration contained in the PLRA. As to Warwick's claim that the refusal to arbitrate constitutes a refusal to bargain under Section 6(1)(e) of the PLRA, 43 P.S. § 211.6(1)(e), that provision, by its express terms, makes it an unfair labor practice to refuse to bargain with representatives of the employees, i.e., the certified bargaining agent, and does not apply to individual members of the collective bargaining unit.[4] Simply put, Warwick has failed to make out an unfair labor practice under either the PLRA or Act 111.

■■■ Warwick also does not have standing to bring an unfair labor practice in the name of the bargaining agent. Under traditional principles of labor relations law, an employee is a third party beneficiary of the collective bargaining agreement and does not have the standing to enforce that agreement if the bargaining representative does not do so. *Ziccardi v. Department of General Services,* 500 Pa. 326, 456 A.2d 979 (1982). Individual members of the bargaining unit lack the standing to file an unfair labor practice charge against an employer to enforce a collective bargaining agreement. *See Roderick v. Pennsylvania Labor Relations Board,* 86 Pa.Cmwlth. 278, 484 A.2d 841 (1984). Only the bargaining representative can seek to enforce the collective bargaining agreement. *Ziccardi, supra; Roderick, supra.* The rule is applicable to private sector and public sector employees. *McCluskey v. Common-*

---

**3.** While the Public Employees Relations Act does not apply to police officers, Section 606 of PERA, Act of July 23, 1970, P.L. 563, § 606, 43 P.S. § 1101.606, provides that "[r]epresentatives selected by public employes in a unit appropriate for collective bargaining purposes shall be the *exclusive representative* of all the employes in such unit . . ." (Emphasis added).

**4.** Among the specific obligations contained within the general mandate to collectively bargain is the duty to process grievances with—but only with—the employee representative. *Danishefsky*

*v. Commonwealth of Pennsylvania,* 540 Pa. 220, 656 A.2d 1326 (1995); *Pottstown Police Officers' Association v. Pennsylvania Labor Relations Board,* 160 Pa.Cmwlth. 87, 634 A.2d 711 (1993). This exclusive duty follows the general rule that where there is a majority representative, the employer is guilty of an unfair labor practice when it engages in direct dealing with its employees rather than through the majority representative. *Charley v. Pennsylvania Labor Relations Board,* 136 Pa.Cmwlth. 411, 583 A.2d 65 (1990).

## 1202

*wealth, Department of Transportation,* 37 Pa.Cmwlth. 598, 391 A.2d 45 (1978).

The disruptive effect of allowing employees to file individually for arbitration and not to proceed through their collective bargaining agent was stated by our Supreme Court in *Falsetti v. Local Union No. 2026,* 400 Pa. 145, 161 A.2d 882 (1960) as follows:

> To view this type of agreement otherwise would lead to chaos and a breakdown in the entire scheme of collective bargaining for which the parties have provided and contracted. Instead of being able to rely on the disposition of employee grievances through the established machinery, the Company would face the constant threat of attempted individual enforcement ... Union responsibility would be diminished and all parties would suffer. For these reasons, most, if not all, union-management agreements of any magnitude in force throughout the Commonwealth are similarly drafted, with an eye toward reposing enforcement responsibility in the labor organization concerned.

> As Judge Fuld of the New York Court of Appeals, concurring in a recent decision very similarly to ours, concluded: "... absent specific language giving the employee the right to act on his own behalf, it is my conclusion that, under a collective bargaining agreement such as the one before us—which contains provision for the submission of unsettled disputes to arbitration—the Union alone has a right to control the prosecution of discharge cases. (See Cox, Rights Under a Labor Agreement, 69 Harv.L.Rev. 601, 648–652)." *Parker v. Borock,* 5 N.Y.2d 156, 159, 156 N.E.2d 297, 300 (1959)). With this approach we wholeheartedly concur.

*Id.* at 169–70, 161 A.2d at 894–895 (footnotes omitted); *see also Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Lee v. Municipality of Bethel Park,* 156 Pa. Cmwlth. 158, 626 A.2d 1260 (1993).

Because Warwick has failed to allege an unfair labor practice against Wilkes–Barre, and because he does not have standing to pursue an unfair labor practice before the PLRB, the order of the PLRB is affirmed.

### ORDER

AND NOW, this 23rd day of February, 1996, the order of the Pennsylvania Labor Relations Board at No. PF–C–93–103–E, dated November 22, 1994, is affirmed.

MIRARCHI, Senior Judge, dissents.