**UPPER MAKEFIELD TOWNSHIP,**
Petitioner,

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Reargued May 6, 1998.
Decided Aug. 27, 1998.

Stephen B. Harris, Warrington, for petitioner.

James L. Crawford, Harrisburg, for respondent.

Sean T. Welby, Harrisburg, for amicus curiae, Upper Makefield Twp. Police Assoc.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, FLAHERTY and LEADBETTER, JJ.

SMITH, Judge.

Upper Makefield Township (Employer) petitions for review of a final order of the Pennsylvania Labor Relations Board (Board) entered July 8, 1997 in which the Board found that Employer committed an unfair labor practice when it refused to proceed to arbitration of a grievance filed by the Upper Makefield Township Police Association (Association). The grievance arose out of the parties' 1990–1992 collective bargaining agreement (Agreement). The question presented to this Court is whether an employer must arbitrate a grievance where the griev-ance procedure set forth in the parties' collective bargaining agreement does not require arbitration as the last stage in a four-step grievance procedure.

The facts of this matter are not in dispute. On July 21, 1992, the Association filed a grievance on behalf of Matthew Shrum, who was terminated as a police officer prior to the end of his probationary period for insubordination and conduct unbecoming an officer. Employer refused to process the grievance through the grievance procedure set forth in the Agreement because Shrum was a probationary employee and according to Employer was no longer classified as a police officer as defined in the Agreement. This began a somewhat lengthy procedural history that is largely not relevant here, except that it resulted in the grievance being processed through the four steps of the grievance procedure and ultimately denied in December 1995 by Employer's Board of Supervisors at the last step in the grievance process.[1] Next, the Association notified Employer that it intended to proceed to binding arbitration. Employer refused because the Agreement included no step for grievance arbitration, and, therefore, Employer believed that it was not required to submit the grievance to arbitration.

On January 3, 1996, the Association filed the unfair labor practice charge alleging that Employer violated the Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10, commonly known as "Act 111," and Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.6(1)(a) and (e),[2] by refusing to pro-

---

1. The grievance process provides for the following steps:

   **Article XIV—Grievance Procedure**

   Grievances arising between the Township and the Department or between the Township and an officer of the Department shall be taken up in accordance with the following procedure:
   Step 1. Request for complaint is made to the immediate ranking officer.
   Step 2. In the event of an unsatisfactory result in Step 1, the request or complaint shall be made in the chain of command up to and including the Chief of Police.

   Step 3. In the event of an unsatisfactory resolution through the chain of command, a meeting may be requested and held with the police liaison officer of the Board of Supervisors.
   Step 4. If the police liaison is unable to provide a specific resolution, a meeting may be requested and held with the Township's Board of Supervisors.

2. Sections 6(1)(a) and (e) provide as follows:
   (1) It shall be an unfair labor practice for an employer-
   (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

ceed to arbitration. The Board concluded that both this Court and the Supreme Court have recognized that Act 111 mandates binding arbitration of all grievances arising under collective bargaining agreements negotiated thereunder, and as a result Employer's refusal to arbitrate constituted an unfair labor practice.[3]

I

Employer asserts that it was not required under the Agreement to submit to grievance arbitration where it negotiated with the Association in good faith and reached the Agreement and processed the grievance through all steps of the grievance procedure and abided by the outcome. Employer argues that the Board's decision was unreasonable, arbitrary and illegal and that it erred in concluding that this Court's decision in *West Lampeter Township v. Police Officers of West Lampeter Township*, 143 Pa.Cmwlth. 226, 598 A.2d 1049 (1991), *appeal denied*, 531 Pa. 658, 613 A.2d 562 (1992), is no longer good law in light of *Pottstown Police Officers' Association v. Pennsylvania Labor Relations Board*, 160 Pa.Cmwlth. 87, 634 A.2d 711 (1993) (en banc), and it further argues that the Board erred in concluding that a statutory duty to arbitrate grievances has been recognized by the Courts.

A brief review of the history of the existing public sector labor statutes is instructive. In 1967, Article III, § 31 of the Pennsylvania Constitution was amended to permit enactment of statutes that incorporate the use of binding arbitration and collective bargaining in the public sector because previously the constitutional scheme did not permit public employers to delegate responsibilities through collective bargaining agreements or binding arbitration awards. *Harney v. Russo*, 435 Pa. 183, 255 A.2d 560 (1969). Shortly thereafter Act 111 was enacted, which con-

ferred the right to collective bargaining upon police and firefighters but withheld the right to strike because of the crucial services they performed. *Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 498 A.2d 1305 (1985). To resolve bargaining impasses in the absence of the employees' ability to strike as an economic weapon, Act 111 included a mandate to employers to engage in binding interest arbitration pursuant to the procedures specified therein. *Id.*

The legislature next enacted the Public Employee Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301, commonly known as "Act 195", which conferred the right to bargain collectively on the remaining public employees. Because their services were not as critical to public safety and welfare, the legislature conferred a limited right to strike and an interest arbitration procedure that is voluntary rather than mandatory. *Moon.* However, Act 195 withheld the right to strike from guards at prisons and mental hospitals and court employees, and it mandated binding interest arbitration because these employees' services are more critical to public safety and welfare. Sections 805 and 1001 of Act 195, 43 P.S. §§ 1101.805 and 1101.1001; *Moon.* Also in Act 195, the legislature included an express mandate in Section 903, 43 P.S. § 1101.903, that parties must include binding arbitration as a final step in any contractual grievance procedure.[4]

The Board reasoned that the legislature incorporated a similar mandate in Act 111, and relied in part on the following language set forth in Section 4:

(a) If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does

---

.  .  .  .
(e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act.

**3.** This Court's review of a Board final order is limited to determining whether the necessary findings of fact are supported by substantial evidence of record and whether a constitutional violation or error of law was committed. *City of*

*Harrisburg v. Pennsylvania Labor Relations Board*, 146 Pa.Cmwlth. 242, 605 A.2d 440 (1992).

**4.** *See also Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982); *Chester Upland School District v. Pennsylvania Labor Relations Board*, 655 A.2d 621 (Pa.Cmwlth.1995), *aff'd per curiam*, 544 Pa. 199, 675 A.2d 1211 (1996).

not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration....

43 P.S. § 217.4(a). Section 4 specifically addresses the subject of interest arbitration and contains no directions concerning grievance arbitration or its procedures. *Pennsylvania State Police v. Pennsylvania State Troopers Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995); *Moon.*

The Board concluded that various Supreme Court decisions, including *Chirico v. Board of Supervisors for Newton Township*, 504 Pa. 71, 470 A.2d 470 (1983), *Moon* and *Betancourt*, and this Court's decisions particularly in *Pottstown* and in *Upper Providence Township v. Buggy*, 100 Pa.Cmwlth. 389, 514 A.2d 991 (1986), demonstrate judicial recognition of the existence of an Act 111 mandate for grievance arbitration. However, review of these decisions demonstrates that the question of whether Act 111 contains a statutory mandate for grievance arbitration was not addressed by either the Supreme Court or this Court. Indeed, in *Pottstown* the issue involved the question of the Board's jurisdiction to determine whether an employer's alleged refusal to comply with the dispute resolution provisions of an Act 111 agreement constitutes an unfair labor practice. The issue presented here concerns the nature of the grievance procedure itself and whether it contains a process not established by terms of the Agreement.

The Supreme Court has held simply that Act 111 authorizes grievance arbitration. *Chirico; Moon; Betancourt.* The Board and the Association further argue that the Supreme Court interpreted Section 1 of Act 111 as "provid[ing] the right to an adjustment or settlement of grievances and disputes under the terms of an existing collective bargaining agreement." *Moon*, 508 Pa. at 505, 498 A.2d at 1310. Section 1 provides as follows:

Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions, including compensation, hours, working conditions, retirement, pensions and other benefits, *and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.*

43 P.S. § 217.1 (emphasis added). The Board relied as well on the language emphasized above in Section 1 to support its conclusion that Act 111 contained an express mandate for grievance arbitration since its inception. However, it is apparent that Section 1 does not express the same clear mandate for grievance arbitration expressed in Act 195.

In *Chirico* the Supreme Court stated that the "only method for settling grievance disputes allowable within the framework of Act 111 is arbitration." 504 Pa. at 79, 470 A.2d at 475. The Board and the Association argue that this statement amounts to the court's recognition of a statutory mandate. However, this reading ignores the context in which the statement was made, and it is overbroad. The Supreme Court noted that the dispute there concerned the interpretation and legality of provisions of an Act 111 interest arbitration award, and it noted at the outset of its discussion of this issue that "[a] dispute over the interpretation of a provision in an existing award falls within the ambit of grievance arbitration." 504 Pa. at 77, 470 A.2d at 474. The court stated that Act 111 specifically avoids resort to the courts for collective bargaining impasse resolution and that labor arbitrators are in the best position to resolve disputes that arise out of an existing interest award. For these reasons the court held that the proper forum for resolution of the dispute was grievance arbitration since the right to be enforced was not clear where an ambiguity existed. The Board and the Association assert that the Supreme Court's reasoning in *Chirico* supports the conclusion that arbitration is the only appropriate forum for all grievance disputes even where the parties agreed otherwise. This Court, how-

ever, does not read *Chirico* so broadly, especially where the language of Act 111 itself sets forth no such mandate.

In *Pottstown* this Court considered the sole question of whether the Board possessed the jurisdiction to decide if an employer's alleged refusal to comply with a decision under the dispute resolution provisions of an Act 111 agreement constitutes an unfair labor practice. The Court stated that Act 111 had been previously interpreted as mandating interest and grievance arbitration. *Moon.* Contrary to assertions by the Board and the Association, the above statement does not amount to the recognition of a statutory mandate for arbitration of all grievances. It appears that the Board and the Association have ignored the citations that immediately followed the statement, which reveal that the Court was simply summarizing established legal principles, including the holding in *Moon.*[5] The Court concluded that the Board possessed jurisdiction to decide if Pottstown's alleged refusal to arbitrate the grievance filed by the officer constituted an unfair labor practice. The Court went one step further and held that Pottstown's alleged refusal to comply with the result of the dispute resolution process must be treated just as an employer's refusal to participate in that process.

## II

The question resolved in *Pottstown* is clearly distinct from the question presented by Employer in the case presently before the Court. *See also Moon* and *Buggy* (questions presented involved whether specific terms of an interest arbitration award were lawful and whether a dispute over ambiguous and vague terms of an agreement required an arbitrator's interpretation in order to resolve a dispute between the employer and employees, respectively). The Board concluded, nonetheless, that *West Lampeter* is inconsistent with the holding in *Pottstown;* it

erred in doing so and in refusing to apply *West Lampeter.*

In *West Lampeter* a contractual grievance procedure existed that included no step for binding arbitration but expressly provided that the decision of the employer's board of supervisors was final. After the grievance involving an officer's ten-day suspension was processed through step one of the two-step grievance procedure and denied, the employee waived step two and notified the township that he wanted to proceed to binding arbitration. The employer refused. The union then filed an action in mandamus, seeking to compel the employer to arbitrate under the agreement. The trial court ordered that the question be resolved by a binding arbitration panel. This Court reversed, reasoning that the agreement between the parties did not require the employer to arbitrate the grievance, and it therefore denied the petition for mandamus.

The question in *West Lampeter* was whether the parties' agreement required the employer to submit the grievance there to arbitration. The Court stated in pertinent part:

The Township argues, and we agree, that *Chirico, Moon,* and *Buggy* are distinguishable from the present matter, because in each case the courts 'filled a void left by the absence of legislation or agreement of the parties.' In the present matter, however, according to the Township, the parties engaged in collective bargaining culminating in the Agreement, which included Section 20 describing a grievance procedure. The Agreement also contained a section indicating that the Agreement superseded all previous agreements and/or arbitration awards and contained all covenants between the parties.

... By not providing, on the face of the agreement, for arbitration of grievances, the parties, according to the Township,

---

5. The Court cited the following: "See 43 P.S. § 217.4; Article III, § 31 of the Pennsylvania Constitution; *Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 498 A.2d 1305 (1985)." The Court reiterated the principles that interest arbitration involves an inability of the parties to agree upon terms for a collective bargaining agreement, whereas grievance arbitration involves a third-party resolution of a dispute between a public employer and a public employee over the interpretation of an existing agreement. *Pottstown,* 160 Pa.Cmwlth. at 90 n 4, 634 A.2d at 713 n 4.

have made 'a conscious decision to exclude arbitration from the dispute resolution process.' According to the Township, the Agreement has provided a mechanism for resolving grievances and that fact distinguishes the present matter from *Chirico, Moon,* and *Buggy,* where 'either the collective bargaining process or the interest arbitration award system had failed to provide the grievant with a vehicle or forum to resolve his grievance.' We agree.

The Agreement is *devoid* of any requirement for grievance arbitration. This matter does not involve the situation where a term of a collective bargaining agreement is ambiguous or in need of interpretation. The Agreement clearly provides for a two step grievance procedure, of which McCord availed himself of step one but chose to waive step two. Having freely bargained for the grievance procedure, the parties are bound by it, and, therefore, the officers are mistaken in their belief that they may, at their pleasure, substitute binding arbitration for step two of the grievance procedure.

*Id.,* 598 A.2d at 1051. The Court concludes that just as in *West Lampeter,* Employer here had no duty to submit the grievance at issue to arbitration. Further, the Court reaffirms the reasoning and holding in *West Lampeter* and declines to accept the Board's position that *West Lampeter* is no longer good law.

Finally, the Board and the Association argue that without statutorily mandated grievance arbitration, Employer's interpretation of the contract will control even where that interpretation is made in bad faith. However, the Court concludes that the absence of this procedure did not give rise to a bad faith interpretation by Employer but effectively left resolution of the grievance to Employer, and the Court finds no inconsistency in this

result with the PLRA or the statutory language or policies of Act 111.[6] In addition, the Court does not agree with the assertion that in the absence of a statutory mandate, pre-arbitral bouts of litigation wasteful of administrative and judicial resources will proliferate. It is the essence of collective bargaining that parties are free to bargain for advantages in exchange for concessions. *Plainfield Township Policemen's Association v. Pennsylvania Labor Relations Board,* 695 A.2d 984 (Pa.Cmwlth.), *appeal denied,* 549 Pa. 730, 702 A.2d 1062 (1997).

The Court's holding today neither enlarges nor diminishes the rights of public employees under Act 111 to binding arbitration in circumstances where this right is established, such as when a collective bargaining impasse occurs, when an agreement or interest award expressly provides for a grievance procedure culminating in binding arbitration or when an ambiguity exists in an existing interest award. Section 4; *Moon; Chirico.* Accordingly, the Board's determination that Employer committed an unfair labor practice is reversed.

## *ORDER*

AND NOW, this 27th day of August, 1998, the final order of the Pennsylvania Labor Relations Board entered July 8, 1997 is hereby reversed.

DOYLE, Judge, dissenting.

I respectfully dissent and would affirm the adjudication of the Pennsylvania Labor Relations Board (Board), which determined that the refusal of Upper Makefield Township to submit the issue of Officer Matthew Schrum's discharge grievance to arbitration was an unfair labor practice and a violation of Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA)[1] and Act 111.[2]

---

**6.** The Supreme Court has held that Act 111 must be read *in pari materia* with the PLRA, and it has declined to incorporate Act 195's provisions for mandatory grievance arbitration into Act 111. *Geriot v. Council of Borough of Darby,* 491 Pa. 63, 417 A.2d 1144 (1980) (Nix, J. dissenting). The PLRA contains no guaranteed right to grievance arbitration, and a refusal to arbitrate grievances arising out of collective bargaining agreements under Act 111 is not a per se violation of

unfair labor practice provisions of the PLRA. *Warwick v. Pennsylvania Labor Relations Board,* 671 A.2d 1199 (Pa.Cmwlth.), *appeal denied,* 545 Pa. 666, 681 A.2d 180 (1996).

**1.** Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.6(1)(a) and (e).

**2.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–.10.

As a preface, although the procedural facts as given in the majority opinion are not in dispute, as the majority opinion correctly points out, there are additional undisputed facts which are also relevant which will illuminate what I believe is the untenable position of the Township, because it previously **did** submit the issue of the arbitrability of the Schrum grievance to binding arbitration and subsequently refused to abide by that arbitrator's decision.

Officer Schrum was hired as a full-time police officer for a one-year probationary period in August of 1991.[3] On July 15, 1992, the Township terminated Schrum's employment, and the Upper Makefield Township Police Association (Association) filed a grievance over his dismissal. The Chief of Police, by letter dated July 22, 1992, refused to process the grievance asserting that Schrum was "no longer an 'Officer' as that term is defined in Article XX, Section 1[4] of the contract. Therefore, the grievance procedures in the contract are not available to Mr. Schrum." (Reproduced Record (R.R.) at 71a.) In response to the Township's refusal to employ even the four-step grievance procedure in the 1990–1992 CBA, the Association filed unfair labor practice charges with the Board, which charges were sustained, and by a final order entered on May 11, 1994, the Board ordered the Township to proceed with arbitration **over the arbitrability of the issue** of whether Schrum was covered under the provisions of the 1990–1992 CBA.[5] That final decision made it explicitly clear that the ultimate and substantive issue regarding Schrum's dismissal was not the principal issue to be immediately arbitrated in the first instance, and, bearing in mind that the Township refused to even discuss the grievance with the Association or employ the four step grievance procedure in the CBA, the Board wrote:

> In granting collective bargaining rights to policemen and firemen in Section 1 of Act 111, the legislature expressly stated that they "shall have the right to an adjustment or settlement of their grievances." Clearly the Act 111 employer has a corresponding duty to discuss employe grievances with their representative where, as here, the collective bargaining agreement contains a grievance procedure.

**We must reject the Township's invitation** to interpret the collective bargaining agreement and determine whether Schrum's termination falls within the scope of the grievance procedure. As discussed by the hearing examiner, it is not the Board's role to determine the scope of the grievance procedure. Rather, that is the function of an arbitrator, at least in the first instance, *Bald Eagle*, [499 Pa. 62, 451 A.2d 671 (1982),]; *East Pennsboro [Area School District v. Commonwealth],* [78 Pa. Cmwlth. 301, 467 A.2d 1356 (1983) ].

. . . .

---

3. The Board found this as a fact and the Township does not disagree that Officer Schrum's probationary period was for one year. (Township's brief page 4.) However, the Township's brief further asserts that, because Schrum was only a probationary officer, he was not covered under the provisions of the parties' collective bargaining agreement (CBA) and, therefore, was not entitled to grieve his dispute as the grievance procedure only applied to "full-time officers." Of course the Township's argument in this respect is self-proving, because whether Schrum was or was not an "officer" under the provisions of the 1990–1992 CBA is a legal conclusion disputed by the parties. The 1990–1992 CBA covered "all full-time police officers holding the rank of Sergeant and below" and defines "officer" in Article XX, Section 1 of the CBA as any "full-time member of the Upper Makefield Township Police Department holding the rank of Sergeant or below ...." with certain exceptions, like the Chief of Police, which are not pertinent here. Officer Schrum *was* a full-time police officer of the Department, even though he was only a probationary officer; hence the dispute.

4. *See supra* footnote 3.

5. While initially there was a question regarding which CBA was applicable to the Schrum grievance, the 1990–1992 agreement or the 1992–1994 agreement, the parties stipulated during the subsequent arbitration hearing on February 6, 1994 that the 1990–1992 contract was the applicable and controlling document. Although the 1992–1994 CBA was effective from January 1, 1992 to January 1, 1994, and Officer Schrum was discharged on July 15, 1992, the subsequent 1992–1994 interest arbitration award was not effective until it was awarded by Arbitrator Di-Lauro on March 17, 1993. Interestingly enough, that arbitration award provided both a grievance and an arbitration procedure. *See* Arbitrator Davis' award, dated June 2, 1994, pp. 2, 10; R.R. 50(a), 58(a).

We emphasize that we are not deciding whether or not Schrum's termination falls within the scope of the grievance procedure.... If the Township has a good faith belief that Schrum's termination is beyond the scope of the grievance procedure, it may state that position in responding to the grievance but may not flatly refuse to process the grievance. Otherwise, the employer could prevent the union from ever receiving an arbitrator's ruling on arbitrability by simply refusing to process the grievance at an earlier stage of the grievance procedure.

(R.R. at 63a–64a.) (Emphasis added.)

That final order of the Board was never appealed by the Township, and the Township proceeded to arbitration before Arbitrator Kathleen A. Davis on February 6, 1994, on the issue of arbitrability. On June 12, 1994, Arbitrator Davis entered an award finding that the Township was obligated to provide the Association with access to the grievance resolution procedure contained in the 1990–1992 CBA and failing resolution of the grievance through that procedure, *the parties were then obligated to further proceed with final binding arbitration* on the substantive issue of whether Officer Schrum was covered as a full-time police officer under the terms of the 1990–1992 CBA.[6]

The Township did then proceed to engage in the grievance procedure through step four, which resulted in the Township's Board of Supervisors rejecting the Schrum grievance. The Association notified the Township on December 21, 1995, of its intent to proceed further with binding arbitration. The Township, by letter dated December 26, 1995, refused to appoint an arbitrator, stating that the decision of the Supervisors was final and binding under the CBA. The Association then filed, for the second time, unfair labor practice charges with the Board.

Although it is these charges which form the basis for the present appeal, the fact remains that there is presently extant a final determination by the Board, entered on May 11, 1994, and unappealed by the Township, which ordered the Township to submit the issue of arbitrability to arbitration. The Township complied with that order and that arbitration resulted in an arbitrator's award on June 12, 1994, which held that "the only choice to resolve the dispute if the Association chooses to go further would be arbitration. The PLRB directs it and the Township has apparently agreed to comply." (R.R. at 60a.) Therefore, in my view, the Township's present refusal to proceed to arbitration is in clear violation of the Board's first order of

6.   The arbitration award states:

   The Township argues that even if the Grievant possesses the right to engage in [the]grievance procedure, he is limited to the procedure as outlined in the Agreement. Directing the parties to arbitration would add a fifth step beyond the scope of the negotiated agreement. Whereas this argument is appropriate in the private sector, the policy considerations that underwrite public employment law require that there be some means to enforce Act 111's mandate that police and firefighters have some mechanism to resolve disputes and grievances. That mechanism is grievance and arbitration. In *Township of Moon v. Police Officers of Township of Moon*, [508 Pa. 495,] 498 A.2d 1305 (1985), the Pennsylvania Supreme Court examined the legislative intent behind Act 111's key language concerning disputes: "... the right to adjustment or settlement of their grievances or disputes in accordance with the terms of this Act." 43 P.S. [§ ]217.1. The Court held that the 1967 Amendment to the Pennsylvania Constitution, Article III, Section 31 explicitly provided for binding arbitration for the resolution of disputes for police and

firefighters. *Id.* [498 A.2d] at 1310. Further, the Court goes on to state that binding arbitration was not limited to contract negotiation difficulties: "[T]o conclude that the arbitration procedure was not intended to cover grievance and dispute resolutions creates a right without providing a remedy for its enforcement." *Id.* [498 A.2d] at 1310. Similarly in this case, the ·imposition of the last step of the grievance procedure as the final opportunity to resolve the grievance also creates a right without enforcement.

   . . . .

   **Despite the Township's opposition to arbitration here, in this case if the grievance is not settled during the grievance process, the only choice to resolve the dispute if the Association chooses to go further would be arbitration. The PLRB Order directs it and the Township has apparently agreed to comply.**

(R.R. 59a–60a.) (Emphasis added.) On January 11, 1995, the Township filed, in the Court of Common Pleas of Bucks County, a petition to vacate the arbitration award and, on October 3, 1996, Common Pleas dismissed the petition for lack of jurisdiction. No appeal has been taken from that final judgment.

May 11, 1994, and would be fully enforceable by the Association under the holding of *Pottstown Police Officers' Association v. Pennsylvania Labor Relations Board,* 160 Pa.Cmwlth. 87, 634 A.2d 711 (1993) (en banc). In *Pottstown,* we held that the Board had jurisdiction to enforce a determination that an employer's refusal to comply with a dispute resolution is an unfair labor practice. Such a ruling would be completely independent of the present final order of the Board in this appeal, which, again, orders the Township to submit Officer Schrum's discharge to final binding arbitration.

Regarding the merits of the present appeal itself, I respectfully disagree with the majority that the Supreme Court has not held that arbitration is the only method allowable within the framework of Act 111 to settle disputes and grievances over discipline.

The issue in *Chirico v. Board of Supervisors for Newton Township,* 504 Pa. 71, 470 A.2d 470 (1983), concerned a dispute over the interpretation of a provision in an existing collective bargaining agreement. Such a dispute is designated a "grievance" and must be submitted to "grievance arbitration," as contrasted with "interest arbitration," which would involve a dispute over the terms of the collective bargaining agreement itself, and must be submitted to interest arbitration. *See Township of Moon,* 508 Pa. at 501 n. 5, 498 A.2d at 1308 n. 5.

There is another type of grievance arbitration, however, involving disputes over the disciplining of police officers and firefighters, which type of grievance is the predicate cause of this appeal. This type of a dispute results in no less of a grievance, because of its nature, than a dispute over the interpretation of a provision in a collective bargaining agreement, and nowhere in either our Constitution or Act 111 did the constitutional authors or the General Assembly distinguish one type of grievance from any other type of grievance. Article 3, Section 31 of our Constitution provides:

> The General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law **for the adjustment or settlement of grievances or disputes** or for collective bargaining between policemen and firemen and their public employers shall be binding on all parties

Pa. Const., art. 3, § 21 (emphasis added).

Under that constitutional authority, the General Assembly enacted Act 111 in 1968, which provides in Section 1, 43 P.S. § 217.1, that police officers and firefights "shall have the right to **an adjustment or settlement of their grievances or disputes** in accordance with the terms of this act." *Id.* (emphasis added).

The Supreme Court, which has never made a distinction between one type of grievance and another, wrote in *Chirico:*

> Act 111 does not set forth the specific mechanism by which grievance, as compared with interest, disputes are to be arbitrated. We acknowledge it is clearly inadequate to recognize a right "to a settlement of grievances or disputes," while failing to provide any method for the implementation of those rights. This obvious vacuum must not be countenanced. Yet resort to the courts to meet this need would contravene the strong affirmance of the use of non-adversarial methods for the resolution of disputes between governmental employers and police and firemen embodied in section two of the Act.
>
> First, Act 111 specifically avoids the use of the courts for dispute resolution. This policy is so strong that section seven of the Act, 43 P.S. [§]217.7, provides for binding arbitration and contains the unique provision that "[n]o appeal therefrom shall be allowed to any court." **Thus the only method for settling grievance disputes allowable within the framework of Act 111 is arbitration.** This objective would be completely frustrated if we were to superimpose, by judicial fiat, a layer of court intervention.

*Id.* at 78–79, 470 A.2d at 474–75 (emphasis added) (footnote omitted).

There is, in my view at least, the same strong public policy reasons, and possibly more, to support a procedure for the swift resolution of disputes over discipline as there are for the swift resolution of interpretation of the terms of some provision in a collective

bargaining agreement, for example, "vacation week." *Chirico.*

The majority dismisses the clear and forceful language of the Supreme Court in *Chirico* by concluding that:

> It is apparent that Section 1 [of Act 111] does not express the same clear mandate for grievance arbitration [as is] expressed in Act 195.
>
> ... This Court ... does not read *Chirico* so broadly, specifically where the language of Act 111 itself sets forth no such mandate.

(Maj. op. at. 601–02.) These are the very arguments (that, there is no **explicit** mandate in Act 111 to arbitrate grievances) that the appellants argued in *Township of Moon,* and which the Supreme Court rejected:

> Appellant contends that Act 111 is limited to "interest" arbitration and does not permit the use of "grievance" or contract arbitration between the public employer and police and fire personnel in the resolution of disputes that may arise under the terms of an existing collective bargaining agreement. This contention is premised upon the fact that Act 111 expressly provides for interest arbitration. *See* 43 P.S. § 217.4. Act 111 does not contain any express provision authorizing the arbitration procedure set forth in section 4, 43 P.S. § 217.4, to be used to resolve grievances that might arise under a collective bargaining agreement. Thus appellant states that this absence of an express authorization represents a legislative intent not to provide binding arbitration as a means for resolution of disputes as to the interpretations of the terms of the contract. In support of this position appellant notes the fact [that] the Public Employe Relation Act, Act of July 23, 1970, P.L. 563, § 101, 43 P.S. § 1101.101 et seq. (hereinafter "Act 195"), specifically provides for grievance arbitration as indicative of a legislative awareness of the distinction between the two types of arbitration procedures and as further evidence of a deliberate legislative judgment to deny grievance

arbitration between public employers and police and fire personnel.

*Id.* at 501, 498 A.2d at 1308.

The Supreme Court, however, rejected this argument and held:

> Thus the constitutional predicate for Act 111 expressly provides for binding resolution of grievances or disputes as well as for collective bargaining. Moreover, as previously noted[,] section 1 of Act 111 in setting forth the intended scope of that legislation also expressly stated that police and fire personnel "shall have the right to" settlement of their grievances or disputes. The mere fact that the arbitration procedure is set forth in the context of an impasse does not warrant the inference that the concept of binding arbitration was to be limited to the resolution of contract negotiation difficulties. To do so would render meaningless section 1's assurance that the resolution of grievances and disputes comprised part of the subject matter to be addressed in the Act. Further, section 1 unquestionably provides the right to an adjustment of grievances and disputes under the terms of an existing collective bargaining agreement. To conclude that the arbitration procedure was not intended to cover grievance and dispute resolutions creates a right without providing a remedy for its enforcement.

*Id.* at 505, 498 A.2d at 1310.

The third case authority upon which the Board relied to conclude that Act 111 contains an implicit statutory mandate for grievance arbitration over discipline was *Upper Providence Township v. Buggy,* 100 Pa. Cmwlth. 389, 514 A.2d 991 (1986). The majority distinguishes this case, as it does *Chirico* and *Township of Moon,* by stating that a "[r]eview of these decisions demonstrates that the question of whether Act 111 contains a statutory mandate for grievance arbitration was not addressed by either the Supreme Court or this Court." (Slip op. at 6.) What is meant, of course, is grievance arbitration over a disciplinary dispute, and, in that context, I would agree that neither *Buggy,* nor *Chirico,* nor *Township of Moon* concerned **disciplinary** grievances.

All three did, however, involve the arbitration of grievances over the interpretation of a particular provision in an arbitration award or a collective bargaining agreement—specifically, the level of wages in *Buggy*, the inclusion of a provision for binding grievance arbitration in *Township of Moon*, and the meaning of the term "vacation week" in *Chirico*. Although I agree that Act 111 does not provide an explicit mandate for the arbitration of **any** grievance, the Supreme Court and this Court has filled in this "obvious vacuum"[7] and held that binding arbitration must be employed in disputes over "grievances." Neither Court made any distinction between grievances over the interpretation of the provisions of an agreement, which is a "grievance," and a dispute over the discipline of a police officer, which is likewise a "grievance." I cannot agree, therefore, that there is a distinction, and both types of grievances are within the implicit mandate that the dispute must be submitted to final binding arbitration.

While the majority opinion states that the "Supreme Court has held simply that Act 111 **authorizes** grievance arbitration, *Chirico; Moon; Betancourt*," (maj. op. at 601) (emphasis added), I believe it is inescapable that the Supreme Court has **mandated** arbitration. To repeat from the Supreme Court's opinion in *Chirico:* "Thus the only method for settling grievance disputes allowable within the framework of Act 111 is arbitration." *Chirico*, 504 Pa. at 79, 470 A.2d at 475.

Lastly, I agree with the majority that *West Lampeter Township v. Police Officers of West Lampeter Township*, 143 Pa.Cmwlth. 226, 598 A.2d 1049 (1991), *petition for allowance of appeal denied*, 531 Pa. 658, 613 A.2d 562 (1992), may be distinguished from the facts presented in this appeal, because the collective bargaining agreement in *West Lampeter* stated explicitly that "[t]his decision shall be final," when referring to the final decision of the Chairman of the Board

of Supervisors resolving the grievance. It is important to note, however, and pertinent to our deliberations in this appeal, that, although the grievance arbitration in *West Lampeter* involved the suspension and discipline of a police officer and hence was a disciplinary grievance,[8] the term "grievance" in that collective bargaining agreement was defined as follows:

> A grievance is hereby defined as a claim or complaint by a member of the bargaining unit regarding the meaning, interpretation or application of any provision of this contract.

*West Lampeter*, 598 A.2d at 1049. Clearly, therefore, although not specifically included in the definition of a grievance, the dispute over the discipline of Officer McCord in *West Lampeter* **was** grieved, and the *West Lampeter* Court held only that final arbitration was excluded because of the specific agreement of the parties, *i.e.*, that the decision of the Chairman of the Board of Supervisors would be final. The *West Lampeter* Court did not hold that *Chirico, Township of Moon*, and *Buggy* were not controlling because the collective bargaining agreement and Act 111 did not provide for a grievance procedure. The holding of the Court was just the opposite, that is, that there was no "obvious vacuum," because the parties themselves specifically had agreed that there would not be a final arbitration to settle the dispute.

Therefore, in my view, *West Lampeter* supports the position of the Board in the resolution of this appeal, and I believe that the Board's argument that we should reconsider and overrule that decision is misplaced. In its brief the Board argues, succinctly, that the duty to arbitrate grievance and interest disputes is an extension of the statutory obligation to collectively bargain in good faith and that a violation of that obligation is an unfair labor practice. I would not disagree with that statement, but the Board advances this reason, *i.e.*, a statutory mandate, as the

---

7. *Chirico*, 504 Pa. at 79, 470 A.2d at 474.

8. Sergeant William McCord of the West Lampeter police department was given a ten day suspension for intemperance and conduct unbecoming an officer, when, during his daughter's birthday party with approximately 200 guests present and outside a home in a residential neighborhood, he became visibly intoxicated and used his authority and profane language to interfere with the efforts of the West Lampeter and State police to terminate the noise and quell a disturbance at the party.

sole reason to overrule *West Lampeter*, concluding implicitly that any agreement to the contrary of that public policy would be void as against public policy. However, there are some circumstances and limited exceptions to that public policy that the Supreme Court has permitted, notably, that, although an arbitration award may not mandate that a governing body carry out an illegal act, *City of Washington v. Police Department of Washington*, 436 Pa. 168, 259 A.2d 437 (1969), a governing body, in limited circumstances, may *agree* to such acts and be prevented on principles of estoppel from avoiding those otherwise "illegal" provisions. *Fraternal Order of Police v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982); *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 410 A.2d 806 (1980). *See also Township of Moon*, where an Act 111 interest arbitration panel included in the award a provision for "binding" grievance arbitration as provided for in the Uniform Arbitration Act. *Id.* at 499 n. 2, 498 A.2d at 1307 n. 2. The Uniform Arbitration Act, however, contrary to the judicial scope of review under Act 111,[9] provides for judicial review of an arbitrator's decision under a judgment N.O.V. standard. 42 Pa.C.S. § 7302(d)(2).

Accordingly, I would affirm the order of the Board.

**9.** *See Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995).