**ELLWOOD CITY POLICE WAGE AND POLICY UNIT, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 12, 1999.

Decided June 15, 1999.

Gary M. Lightman, Harrisburg, for petitioner.

Keith A. Herbster, Harrisburg, for respondent.

Before McGINLEY, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Ellwood City Police Wage and Policy Unit (Unit) petitions for review from the September 15, 1998 order of the Pennsylvania Labor Relations Board (Board) that sustained the exceptions of the Borough of Ellwood City (Borough) to the hearing examiner's proposed decision and order (PDO). The Board vacated the hearing examiner's PDO, dismissed the Unit's charges of unfair labor practices against the Borough and rescinded its complaint. For the reasons that follow, we affirm.

The Unit is the recognized bargaining agent for police employees of the Borough. The Unit and the Borough were parties to a collective bargaining agreement (CBA) effective January 1, 1995 through December 31, 1997. Article II(6)(a) of the CBA provided that

> [o]fficers shall be compensated for Court appearances at a minimum of three hours at time and a half. Court time will be paid only for actual time at the site of the hearing or trial. Any time spent for Court purposes in addition to the minimum or three hours will be paid at time and a half rate. Travel time will be paid for required Court appearances that are not in Lawrence or Beaver Counties.

(Certified Record "C.R." Unit's Exhibit # 2).

Prior to October of 1996, the district justice serving the Borough scheduled summary hearings according to his schedule, without input from the Borough. Officers were frequently required to appear in court on their scheduled days off. Accordingly, officers were paid time and a half pursuant to the CBA.

In October of 1996, Chief of Police Joseph Santillo wrote a letter to the district justice, requesting that he schedule officers to appear in court on their regularly scheduled workdays. Thus, the officers'

opportunity to earn overtime compensation was hampered.

Consequently, the Unit filed charges of unfair labor practices against the Borough, alleging that it violated Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA).[1] A hearing was held on July 7, 1997 to address the Unit's charges. In the PDO, the hearing examiner concluded that the Borough's past practice of not interfering with scheduling by the district justice rose to the level of a binding past practice. The hearing examiner further concluded that the matter was subject to mandatory bargaining because the Borough attempted to justify its actions as a cost-saving measure.

The Borough took exceptions to the PDO. On review, the Board found in favor of the Borough, reasoning that 1) affirmative conduct was necessary to establish a binding past practice, 2) the activity in question must, at least, occur *between* the parties sought to be bound by it and 3), the matter was not subject to mandatory bargaining under the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10 (Act 111). Accordingly, the Board issued a final order sustaining the exceptions, vacating the PDO and dismissing the charge of unfair labor practices and rescinding the complaint issued thereon. This appeal followed.

■ The Unit raises one issue for our review: whether the Board erred in holding that where a municipal employer takes affirmative action that results in a unilateral change in the scheduling of officers there is no duty to bargain. Our scope of review is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed, or whether the Board's necessary findings are supported by substantial evidence. *Upper St. Clair Police Officers Ass'n v. Pennsylvania Labor Relations Board*, 689 A.2d 362, 365 n. 4 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 549 Pa. 721, 701 A.2d 580 (1997).

Sections 6(1)(a) and (e) of the PLRA, 43 P.S. § 211.6(1)(a) and (e), provide:

(1) It shall be an unfair labor practice for an employer-

(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

. . .

(e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act.

■ Generally, in the field of labor law, there are four situations in which evidence of past practice is used:

(1) to clarify ambiguous language;

(2) to implement contract language which sets forth only a general rule;

(3) to modify or amend apparently ambiguous language which has arguably been waived by the parties; and

(4) to create or prove a separate enforceable condition of employment which cannot be derived from the express language of the agreement.

*County of Allegheny v. Allegheny County Prison Employees Indep. Union*, 476 Pa. 27, 34, 381 A.2d 849, 852 (1977).

■ In its determination, the Board concluded that the activity in question must, at least, occur between the parties to be bound by it.[2] We agree with this conclusion and thus, need not address the specific issue of whether the lack of activity by the Borough rose to the level of a binding past practice.

---

1. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.6(1)(a) and (e).

2. Both the hearing examiner and the Board cited numerous Board decisions in support of their respective determinations. Our research, however, has failed to discover any Pennsylvania appellate or federal case law indicating that, in the area of labor law, a binding past practice may be established by a party's lack of response to a repeated activity.

■ In order to establish a past practice, there must be some legal relationship between the parties. The action here is between the district justice and the Borough, with the Unit merely benefiting from it. As the Board noted, the district justice has the ultimate decision in scheduling court hearings and neither the Borough nor the Unit has any legal recourse against the district justice. Thus, in this particular case, we find that absent a legal relationship between the district justice and the Borough, a binding past practice cannot be found to have existed between the Borough and the Unit. Accordingly, we conclude that the Board did not err in determining that the Borough and the Unit have not engaged in a binding past practice.

However, we must still determine whether the Board properly concluded that the matter was not subject to mandatory bargaining under Act 111. Section 1 of Act 111, 43 P.S. § 217.1, provides that

[p]olicemen and firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

■ In construing this language, our courts have concluded that an issue is bargainable if it bears some rational relationship to an employee's duties. *Delaware County Lodge No. 27, Fraternal Order of*

*Police v. Pennsylvania Labor Relations Board,* 722 A.2d 1118 (Pa.Cmwlth.1998). "However, where a managerial policy concern substantially outweighs any impact the issue will have on employees, the issue will be deemed a managerial prerogative, rendering the issue nonbargainable." *Id.* at 1121.

In support of its position, the Unit cites *Township of Upper Saucon v. Pennsylvania Labor Relations Board,* 152 Pa. Cmwlth. 530, 620 A.2d 71 (1993) for the proposition that the issue here is one of "hours and wages" and therefore, is subject to mandatory bargaining under Act 111. In *Upper Saucon,* the Township unilaterally changed the shift system for police personnel from a "5–2" schedule to a "7–2," "7–2," "6–4" schedule.[3] The Police Association filed charges of unfair labor practices against the Township. The hearing examiner concluded, and the Board agreed, that the issue was subject to mandatory bargaining.

On appeal we affirmed, reasoning that it was clear that the officers' shift schedules were rationally related to their duties and that the Township's stated objectives did not substantially outweigh the impact that the change would have. We further concluded that rotating shifts were encompassed in the term "hours" as that term is used by Act 111.

We find *Upper Saucon* to be distinguishable. First, the issue in question involves the activity of a third party over whom neither the Borough nor the Unit has any control. Second, even assuming the Unit's position is correct, the officers are not guaranteed a certain number of overtime hours for court. Furthermore, the Borough did not alter its scheduling practices. Overtime court appearances are strictly dependent on scheduling done by the district justice and officers continue to work

---

3. Under a "5–2" schedule, officers worked five consecutive days, followed by two days off. The officers did not necessarily work the same hours all five days. Under a "7–2," "7–2," "6–4" schedule, officers worked seven days of first shift, followed by two days off; seven days of second shift, followed by two days off; and six days of third shift, followed by four days off.

their normal work schedules as established by the Borough. Similarly, the CBA provided for the payment of overtime wages in the event that overtime is made available to personnel. Thus, the Borough fulfilled its obligation to bargain.

Finally, the Unit maintains that the Borough had a duty to bargain over the impact of its actions. Under Act 111, an employer has a duty to bargain over the effects of its decisions. *See City of Philadelphia v. Pennsylvania Labor Relations Board,* 138 Pa.Cmwlth. 113, 588 A.2d 67, *petition for allowance of appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991). The resolution of this issue is likewise determined by the fact that the district justice, not the Borough, is ultimately responsible for the scheduling of court appearances. The district justice can choose to accommodate the Borough's request or he can ignore it, without consequence from either decision. It is the district justice's decision that impacts the opportunity for overtime compensation. Accordingly, we agree with the Board's conclusion that mandatory bargaining would be futile where such decisions are left to a third party not a party to the CBA.

Based upon the foregoing, we affirm.

### ORDER

AND NOW, this 15th day of June, 1999, it is hereby ordered that the September 15, 1998 order of the Pennsylvania Labor Relations Board is affirmed.