# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County Police Association, : 
                       Petitioner : 
                                    : 
                   v. : No. 445 C.D. 2017
                                    : Argued: November 13, 2017
Pennsylvania Labor Relations Board, : 
                       Respondent : 

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                      FILED: December 15, 2017

Allegheny County Police Association (ACPA) petitions for review of the March 21, 2017 Final Order of the Pennsylvania Labor Relations Board (PLRB), which sustained the exceptions of Allegheny County (County) to the Hearing Examiner's August 31, 2016 Proposed Decision and Order and dismissed the unfair labor practices charge filed by ACPA. After review, we affirm.

The undisputed facts as found by the Hearing Examiner and summarized in the PLRB's Final Order are as follows.[1] The County maintains a bomb squad known as the Explosive Ordnance Disposal (EOD) Unit (County EOD Unit). The County

---

[1] *See* ACPA's Br. at 10 "undisputed facts"; PLRB's Br. at 3 "facts of this case are the Findings of Fact . . . of the Hearing Examiner's Proposed Decision"; thus, the facts are taken from the PLRB's Final Order, unless otherwise indicated.

EOD Unit "responds to calls regarding threats from explosive devices, ordnance[,] and other materials, and supports other governmental agencies investigating explosives and explosive materials." (PLRB Final Order at 1 n.2.) There are currently eight police officers in the County EOD Unit who are members of the bargaining unit represented by ACPA. The work of the County EOD Unit is not full-time, and the bargaining unit police officers' participation in the County EOD Unit is voluntary and collateral to their patrol duties.

The City of Pittsburgh (City) maintains its own EOD Unit (City EOD Unit). Both the City EOD Unit and the County EOD Unit are part of the Pennsylvania Region 13 Task Force (Region 13). Region 13 is a Federal Emergency Management Agency designation for the thirteen counties in southwestern Pennsylvania. The Southwestern Pennsylvania Emergency Response Group (SPERG), comprised of a board of directors, governs Region 13's emergency management.[2] The Commonwealth distributes funding received from the federal government to SPERG. SPERG uses the funds to equip and train the City EOD Unit and the County EOD Unit.

Between 2003 and 2013, the City EOD Unit responded to calls regarding perceived threats from explosives that were within the geographical limits of the City. The City EOD Unit did not respond to any calls from outside the City or outside the County. The County EOD Unit responded to calls regarding perceived threats from explosives outside the City, but within the geographical limits of the County. The County EOD Unit also responded to all calls regarding perceived

___

[2] Region 13 is part of the intrastate mutual aid system established in Pennsylvania to provide mutual assistance among participating political subdivisions "in the prevention of, response to and recovery from threats to public health and safety that are beyond the capability of an affected community to respond." Section 7331 of the Intrastate Mutual Aid Act, 35 Pa. C.S. § 7331.

2

threats from explosives outside the County but within the other counties comprising Region 13 (the outside counties).

On or about March 1, 2014, Charles Moffatt, the Superintendent for the County Police Department, entered into a Memorandum of Understanding (MOU) with the City. The MOU provided that, beginning April 2014, the City EOD Unit and the County EOD Unit would alternate on a monthly basis in responding to EOD calls originating from counties outside the County but within Region 13. No one from SPERG signed the MOU. Superintendent Moffatt explained during his testimony that the MOU merely implemented a response policy so that there would be no confusion as to which EOD unit would be responding at a given time when a call for assistance came into 911. Superintendent Moffatt further testified that SPERG decided that the City and County EOD Units were to alternate each month in responding to calls from outside of the County, and that SPERG's decision could not be implemented without the City and the County entering into the MOU. (Hr'g Tr. at 54, 75-76, Reproduced Record (R.R.) at 88, 109-10.) Superintendent Moffatt added that neither he nor the County has authority over SPERG, although the County does have a representative on SPERG. (Hr'g Tr. at 54-55, 62, R.R. at 88-89, 96.) Shortly after the MOU was signed, Superintendent Moffatt issued a memorandum to Alvin Henderson, the Emergency Management Coordinator for Region 13, informing him of the MOU. The County did not bargain with ACPA before entering into the MOU with the City.

On May 1, 2014, ACPA filed a Charge of Unfair Labor Practices, alleging that the County had violated its duty to bargain under Section 6(1)(a) and (e) of the

Pennsylvania Labor Relations Act (PLRA)[3] and Act 111 of 1968[4] by unilaterally subcontracting County police bargaining work to the City police.[5]  A hearing was held before the PLRB's Hearing Examiner who thereafter issued the Proposed Decision and Order (PDO).  The Hearing Examiner concluded that the County had violated Section 6(1)(a) and (e) of the PLRA by unilaterally assigning the bargaining unit work at issue from the County EOD Unit to the City EOD Unit.  The County filed exceptions to the PDO with the PLRB.

The PLRB issued a Final Order sustaining the County's exceptions and dismissing ACPA's Charge of Unfair Labor Practices.  The PLRB stated that, "[g]enerally, a public employer commits an unfair labor practice when it subcontracts or otherwise transfers any work that members of the bargaining unit have been performing on an exclusive basis to persons outside the unit without first bargaining with the employe representative." (PLRB Final Order at 3.)  However,

---

[3] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a), (e).  Section 6(1)(a) and (e) of the PLRA provides, in pertinent part:

> (1) It shall be an unfair labor practice for an employer--
> (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
> * * *
> (e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act.

*Id.*  Section 7(a) of the PLRA mandates, in turn, bargaining between an employer and a union over wages, hours, and other conditions of employment.  43 P.S. § 211.7(a).

[4] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.  Our Supreme Court has held that Act 111 and the PLRA, when not in conflict, are to be read in *pari materia*. *Phila. Fire Officers Ass'n v. Pa. Labor Relations Bd.*, 369 A.2d 259, 261-62 (Pa. 1977).

[5] ACPA alleged and provided testimony to the effect that officers from the County EOD Unit received overtime pay for responding to calls outside the County and that the reduction in call volume would result in a reduction in pay.  (Compl. ¶ 7, Certified Record at 3; Hr'g Tr. at 23-24, 32-33, R.R. at 57-58, 66-67.)

4

the 911 call centers, and not the County, control the assignment of emergency EOD calls. (*Id.* at 4.) The PLRB noted that although the City and the County provide the 911 call centers with a schedule regarding whom to dispatch in a particular month, "there [wa]s no evidence that the County exercises control over the manner in which the 911 [call c]enters dispatch such calls." (*Id.*)

Moreover, the PLRB concluded, the County's decision as to what level of services to provide was a managerial prerogative not subject to collective bargaining. (*Id.*) The PLRB noted that the City and the County elected to be members of Region 13 and to provide EOD assistance to municipalities within the 13 counties encompassing Region 13. (*Id.* at 5.) The work the County EOD Unit is doing, now every other month, is for residents outside of the County. (*Id.*) The work is not done on behalf of the County or its residents. (*Id.*) The PLRB stated that the County "cannot bargain with [ACPA] over the decision of other governmental agencies within Region 13 to utilize the EOD services of the City as opposed to the County." (*Id.*) The PLRB held that just as it was within the County's managerial prerogative when it decided to provide EOD assistance outside the County, it was within the County's managerial prerogative when it decided to reduce those services. (*Id.*) In other words, to require the County to bargain with ACPA over the work at issue "would unduly infringe upon the County's managerial discretion to determine the level of EOD services it deems necessary to provide within Region 13 outside of its geographical boundaries." (*Id.* at 6.) Accordingly, the PLRB concluded that the County did not commit an unfair labor practice.

ACPA now petitions for review of the Final Order.

5

ACPA argues that the PLRB erred as a matter of law when it concluded that the County did not commit an unfair labor practice. The work the County EOD Unit was performing each month is bargaining unit work, according to the ACPA. Therefore, the County could not transfer such work to the City without first negotiating with ACPA. ACPA adds that the County did not present any evidence that Region 13 municipalities were dissatisfied with the services the County EOD Unit was providing, and the decision to split the EOD work was solely that of Superintendent Moffatt. Further, ACPA contends, it is not within the managerial prerogative of the County to transfer any bargaining unit work to non-ACPA members, citing *City of Harrisburg v. Pennsylvania Labor Relations Board*, 605 A.2d 440 (Pa. Cmwlth. 1992).

Our standard of review of a decision of the PLRB "is limited to determining whether there has been a violation of constitutional rights, an error of law, procedural irregularity, or whether the findings of the agency are supported by substantial evidence." *Borough of Ellwood City v. Pa. Labor Relations Bd.*, 998 A.2d 589, 594 (Pa. 2010). A decision of the PLRB will not be disturbed if its "factual findings are supported by substantial evidence, and if conclusions of law drawn from those facts are reasonable, not capricious, arbitrary, or illegal." *Id.* "[T]he PLRB possesses administrative expertise in the area of public employee labor relations and should be shown deference; the Commonwealth Court will not lightly substitute its judgment for that of the PLRB." *Lehighton Area Sch. Dist. v. Pa. Labor Relations Bd.*, 682 A.2d 439, 442 (Pa. Cmwlth. 1996) (internal quotation marks and citations omitted).

In *City of Harrisburg*, we said that "a public employer commits an unfair labor practice when it unilaterally transfers **any** unit work to non-members without first bargaining with the unit." *City of Harrisburg*, 605 A.2d at 442 (emphasis in

6

original.)  Here, however, ACPA's reliance on *City of Harrisburg* is misplaced because the County did not transfer bargaining unit work to non-ACPA members. As the County correctly notes in its brief, a police officer's primary jurisdiction is limited to the geographical boundaries of the officer's municipal employer.[6] Sections 8951 and 8952 of the Municipal Police Jurisdiction Act, 42 Pa. C.S. §§ 8951, 8952.  The reason that the County EOD Unit even has jurisdiction here to act outside of the County is because the outside counties, through Section 7335(a) of the Intrastate Mutual Aid Act (IMAA), 35 Pa. C.S. § 7335(a), permit the County EOD Unit to do so.[7]  As Superintendent Moffatt indicated during his testimony, however, the outside counties decided, through SPERG, that the County EOD Unit would respond to calls only every other month, and the County acceded to SPERG's decision, as it had to do.[8]  The outside counties then requested the assistance of the

---

[6] Witnesses for both parties also acknowledged during the hearing that a County police officer has no authority outside of the County unless an outside county delegates that authority to the County police officer.  (Hr'g Tr. at 34-35, 52-53, R.R. at 68-69, 86-87.)

[7] Section 7335(a) of the IMAA provides, as follows:

> A participating political subdivision may request assistance of other participating political subdivisions or their designated emergency response organizations.  All requests for assistance shall be initiated from the incident commander or authorized designee at an incident location, the county 911 center or the county emergency manager where the incident occurs.  All intrastate mutual aid requests for assistance shall be made to the county 911 center or county emergency management coordinator or authorized designee in the responding county. Intrastate mutual aid requests for assistance may also be made through the agency. A written request shall be submitted after a verbal request is made as soon as practicable or within the number of days that the agency, in its discretion, may determine.

35 Pa. C.S. § 7335(a).

[8] Although neither the Hearing Examiner nor the PLRB specifically mentioned Superintendent Moffatt's testimony on this point in their decisions, they did not find him to be lacking in credibility.  Moreover, the PLRB obviously found his testimony on this point credible

7

City EOD Unit for those months that the County EOD Unit would no longer be responding to calls.[9] Thus, the County did not unilaterally transfer the work it was performing outside of the County. Indeed, the County had no authority to do so. Instead, it was the **outside counties** that transferred the work the County had been doing every month to the City on an every other month basis. *See Am. Fed'n of State, Cnty. and Mun. Emp., Council 13, AFL-CIO, v. Pa. Labor Relations Bd.*, 616 A.2d 135, 137 (Pa. Cmwlth. 1992) (noting that the complainant bears the burden of proving an alleged unfair labor practice).

In *City of Harrisburg*, in contrast, the City of Harrisburg unilaterally transferred unit bargaining work to non-members, which the City of Harrisburg had the authority to do, but not without first bargaining with the union. Specifically, the City of Harrisburg created a park ranger program and authorized park rangers to issue citations for summary violations of park rules and regulations, which City of Harrisburg police officers had been previously doing exclusively. *City of Harrisburg*, 605 A.2d at 441. This sharing of the issuance of citations constituted an unfair labor practice because the City of Harrisburg unilaterally transferred some of the work that members of the bargaining unit (police union) had been doing, exclusively, to non-bargaining unit members (park rangers) without bargaining with the police union. *Id.* Unlike here, however, in that case, the City of Harrisburg transferred work that was within its geographical confines and, thus, fell within its

---

because it concluded that it was "the decision of other governmental agencies within Region 13 to utilize the EOD services of the City as opposed to the County" on an alternating basis. (PLRB Final Order at 5.)

[9] Notably, Section 7335(c) of the IMAA provides that the political subdivision requesting assistance "shall reimburse the responding political subdivision in accordance with procedures established by" the Intrastate Mutual Aid Committee. 35 Pa. C.S. § 7335(c). That the outside counties were responsible for reimbursement further supports the conclusion that it is the outside counties that transferred the work at issue, and not the County.

authority to transfer, albeit not without first bargaining with the union. Thus, the PLRB did not err in concluding that the County has no control over the outside counties' decision to request fewer EOD services from the County EOD Unit and for the outside counties to transfer some of that work to the City EOD Unit.

We came to the same conclusion in *Ellwood City Police Wage and Policy Unit v. Pennsylvania Labor Relations Board*, 731 A.2d 670 (Pa. Cmwlth. 1999). There, the district justice covering the Borough of Ellwood City had scheduled summary hearings according to his schedule without input from the Borough, which often resulted in officers receiving overtime pay because they had to appear in court on their scheduled days off. *Id.* at 671. The Chief of Police requested that the district justice change his practice and schedule officers to appear in court on their regularly scheduled workdays. *Id.* As a result, the officers suffered a reduction in their overtime pay. *Id.* at 671-72. We concluded that the matter was not subject to mandatory bargaining. *Id.* at 673. We reasoned that "the issue in question involves the activity of a third party over whom neither the Borough nor the Unit has any control." *Id.* Thus, it would be "futile" to order mandatory bargaining where the decision is left to a third party. *Id.* at 674.

Likewise, here, neither the County nor ACPA has control over whether the outside counties request EOD assistance from the County EOD Unit or the City EOD Unit.

Rather than unilaterally transferring bargaining unit work to non-ACPA members, the PLRB concluded that the County here merely reduced the level of services it would provide to the outside counties, as requested by the outside counties through SPERG. The level of services the County provides is a topic that "lie[s] exclusively within the domain of the municipality as a managerial prerogative." *City*

9

*of Allentown v. Int'l Ass'n of Fire Fighters Local 302*, 157 A.3d 899, 908 n.8 (Pa. 2017) (noting that the level of provision of services a municipality provides is often so clearly a managerial prerogative that testimonial or documentary evidence may not be necessary to establish that this topic is a managerial prerogative); *see also City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 572 (Pa. 2010) (stating that "the size of a municipality's fire department, the creation, continuance, and closure of companies, and the redistribution of resources and a workforce are recognized as classic examples of managerial prerogatives that a public employer decides on its own"). Moreover, the County's managerial prerogative in providing those services is limited by the managerial prerogative of the outside counties requesting those services as provided by Section 7335 of the IMAA. *See Borough of Morrisville v. Morrisville Borough Police Benevolent Ass'n.*, 756 A.2d 709, 710-11 (Pa. Cmwlth. 2000) (holding that the allocation of excess pension interest was an inherent managerial prerogative of the municipalities because a state statute made it so). The PLRB, therefore, did not err.

ACPA's remaining arguments are unavailing. It is irrelevant to this determination whether or not Region 13 counties were dissatisfied with the services the County EOD unit was providing to them. ACPA argues that the County's decision to split EOD services with the City was solely that of Superintendent Moffatt, but he credibly testified that SPERG indicated that it wanted the City and County EOD Units to alternate responding to calls each month. Moreover, as the Superintendent for the County Police Department, he would decide the distribution of police resources for the County, which, under these circumstances, the PLRB could find, is a matter of managerial prerogative.[10]

---

[10] In light of our determination, we need not address the remaining contentions of the County.

10

Accordingly, we affirm the PLRB's Final Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County Police Association, :
                   Petitioner :
                                 :
                    v. :   No. 445 C.D. 2017
                                 :
Pennsylvania Labor Relations Board, :
                  Respondent :

# **O R D E R**

**NOW**, December 15, 2017, the March 21, 2017 Final Order of the Pennsylvania Labor Relations Board is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge